F. H. SEYDLER et al., Appellants,

v.

George HERDER, III, et al., Appellees.

No. 5540.

Court of Civil Appeals of Texas.

El Paso.

Oct. 3, 1962.

Rehearing Denied Oct. 31, 1962.

terest in the oil, gas and other minerals in 600 acres of land in Andrews County.

Appellants are the heirs of George Seydler and claim title under one of two wills executed by Seydler. Seydler first acquired title to the land in question by virtue of two deeds from E. T. Williamson and wife during the years 1908 and 1909. Thereafter, Seydler conveyed the same land to George Herder, under whom appellees hold title. Seydler executed two deeds to George Herder—the first was a general warranty deed executed and delivered by George Seydler, without the joinder of his wife, to George Herder on January 30, 1911. The second deed was executed more than sixteen years later, in April of 1927, and was a quitclaim deed signed by George Seydler and wife, Louise Seydler, purporting to convey the same land to George Herder, but containing the following clause:

"$\frac{1}{16}$ oil & Mineral rights retained."

At the time of trial both the Seydlers, as well as George Herder and his wife, were dead, the interest of the Herders in the land in question having passed by conveyance and inheritance to the appellees.

George and Louise Seydler were married only once during their lifetimes, and then to each other. They were married November 30, 1892, and lived together continuously until the death of Louise Seydler on October 7, 1937, all of her property passing at that time to George Seydler, who survived her. Thereafter, on May 25, 1951 George Seydler died leaving two wills, the first dated May 26, 1938, and the second June 8, 1938. The will of May 26th was admitted to probate on January 17, 1955, and probate judgment entered vesting title to all the property owned by George Seydler at the time of his death in Erna and Victor Baumgarten, the only devisees named in such will. On March 18, 1957, more than two years after the first will was admitted to probate, the second will of George Seydler, in which he devised all of his property to the appellants herein, was admitted to probate.

Ramsey, Barber & Smith, Andrews, Harry D. Larson, Eagle Lake, for appellants.

Stubbeman, McRae, Sealy & Laughlin, W. B. Browder, Jr., Midland, Hodges, Moore & Gates, Columbus, Ross Madole, Charles B. Wallace, James T. Fitzpatrick, Dallas, for appellees.

LANGDON, Chief Justice.

Appellants, as plaintiffs in the court below, brought this suit in trespass to try title against appellees, claiming and seeking to recover an undivided one-sixteenth in-

The Seydler appellants contend that George Seydler, at the time of his death, was the owner of an undivided one-sixteenth interest in the oil, gas and other minerals in the 600-tract of land in question, by virtue of the clause, "$\frac{1}{16}$ oil & Mineral rights retained", inserted in the quitclaim deed of April, 1927, from George Seydler and wife, Louise Seydler, to George Herder; and that they (the appellants) are now the owners of such interest as the devisees of George Seydler under the terms of his will of June 8, 1938.

Trial was to the court without a jury, and the trial court, after considering the pleadings and the title instruments and the evidence adduced from the witnesses, found and entered judgment that the facts and the law were with the appellees, and that appellants should take nothing by their suit.

Appellants have based this appeal upon six points of error, and six rebuttal points filed in reply to six counter-points raised by appellees in their brief.

It is appellants' contention (1) that the quitclaim deed is an ancient instrument and that the execution and acknowledgment thereof by the grantors raised legal presumptions that it was delivered by such grantors and was accepted by George Herder, and that such presumptions will stand until overcome by legal and competent evidence; (2) that appellees became bound by the recitals contained in a subsequent deed from Erna Baumgarten, individually and as administratrix of the estate of Victor Baumgarten, deceased (quitclaiming to appellees any interest they, the Baumgartens, then purportedly owned by virtue of the probate of George Seydler's will of May 26, 1938); (3), that the quitclaim deed of April, 1927, from the Seydlers to George Herder was contractual in its nature and supported by adequate consideration; (4) that such quitclaim deed was and is a link in the George Herder chain of title to the 600-acre tract of land; (5) that such quitclaim deed from the Seydlers to George Herder was ratified and affirmed by appel-

lees after the death of George Herder and his wife, Mary Herder; and, (6), it is contended that the judgment of the trial court should be reversed because the evidence shows that appellants are tenants in common with the appellees as to the mineral interest in said land, and as such are entitled to an accounting for their one-sixteenth mineral interest in the oil and gas produced from said land since February, 1955.

It is plain that the title asserted by appellants is based solely upon the mineral clause contained in the Seydlers' quitclaim deed of April, 1927. Each of appellants' points relate to and depend upon a determination of certain factual matters, circumstances and events, which were for the court to decide as the trier of facts. Among the facts which the court might have found under the evidence in this case are the following: That the 600-acre tract of land was acquired by George Seydler after his marriage to Louise Seydler in 1892, and became a part of the community property of the said George and Louise Seydler, but that they never lived upon such property or otherwise ever used, claimed or occupied it as a homestead; that the general warranty deed from George Seydler to George Herder dated January 30, 1911 divested each of the Seydlers of their community interest in the land and vested it in George Herder; that there was never any delivery of the quitclaim deed of April, 1927 to George Herder; that Mr. Herder did not request such quitclaim deed and never accepted it; that the quitclaim was placed on record by a stranger to the title after the death of George Herder; that the Herder heirs never received, accepted or used the instrument; that the acceptance by the Herder heirs of a subsequent quitclaim from Erna Baumgarten, the apparent successor to any interest that either George or Louise Seydler may have possessed was, on its face, a compromise and did not either in fact or in law constitute a recognition of the April, 1927 quitclaim.

█ This was a trial before the court without a jury. Neither party requested,

nor did the court on its own accord file, findings of fact or of law, other than are found in the judgment. In such case, where there is sufficient evidence to support such findings, it will be conclusively presumed on the appeal that all the issues of fact were found by the trial court in such way as to support the judgment. Miller v. Leary, Tex.Civ.App., 245 S.W.2d 980 (n. w. h.); DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687, cert. den., 325 U.S. 862, 65 S.Ct. 1196, 89 L.Ed. 1983; Pinson v. Dreymala, Tex. Civ.App., 320 S.W.2d 152 (err. dism.); 4 Tex.Digest 396, Appeal & Error, ¶ 931(3).

■ We have carefully examined the evidence adduced at the trial and have concluded that there was sufficient evidence to support all the findings impliedly made by the court in support of its own judgment.

■ Even assuming, without so holding, that the character of the land was such as to have required the joinder of Mrs. Louise Seydler with her husband in the general warranty deed from George Seydler to George Herder on January 30, 1911, it is undisputed that whatever title Mrs. Seydler possessed passed, on her death, to her husband, George Seydler.

The general warranty deed from George Seydler to George Herder warranted the full fee simple title to George Herder. It conveyed all the title that Seydler had, and if he did not then have the full fee simple title, but later acquired it, then such title would pass eo instante to George Herder, and would relate back to the date of said warranty deed.

In Duhig v. Peavy-Moore Lumber Co., Inc., 135 Tex. 503, 144 S.W.2d 878, the Supreme Court of Texas, speaking through Justice Smedley, in part said:

"The deed, of course, does not actually convey what the grantor does not own. * * *. But the granting clause in this deed describes what is conveyed as the tract or parcel of land known as the Jordan survey. This description includes the minerals, as well as the sur-

face, and thus the granting clause purports to convey both the surface estate and all of the mineral estate."

In discussing the effect of the covenant of general warranty Justice Smedley cited, with approval, the following from 19 American Jurisprudence 614, section 16, which reads as follows:

"It is a general rule, supported by many authorities, that a deed purporting to convey a fee simple [title] or a lesser definite estate in land and containing covenants of general warranty of title or ownership will operate to estop the grantor from asserting an after-acquired title or interest in the land, or the estate which the deed purports to convey, as against the grantee and those claiming under him."

In stating the rule to be followed in such cases, Justice Smedley quoted from a decision of the Michigan court, Smith v. Williams, 44 Mich. 240, 6 N.W. 662, which he termed a "clear statement of the rule and the reasons supporting it"—as follows:

"Where one assumes by his deed to convey a title, and by any form of assurance obligates himself to protect the grantee in the enjoyment of that which the deed purports to give him, he will not be suffered afterwards to acquire or assert a title and turn his grantee over to a suit upon his covenants for redress. The short and effectual method of redress is to deny him the liberty of setting up his after-acquired title, as against his previous conveyance. This is merely refusing him the countenance and assistance of the courts in breaking the assurance which his covenants had given."

What the rule prohibits is *the assertion of a title in contradiction of the warranty.* The rule has been consistently followed and upheld in such cases as Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166; McMahon v. Christmann, 167 Tex. 403, 303 S.W.2d 341, 304 S.W.2d 267; Miles v.

Martin, 159 Tex. 336, 321 S.W.2d 62; and many others.

If George Seydler was estopped to assert his after-acquired title, as we believe he was, appellants are likewise estopped. See "The Doctrine of After-Acquired Title", 11 S.W.Law Journal 217, and cited cases.

While other questions are possibly raised by appellants' points, we are of the opinion that what we have said here is decisive of this case and renders a further discussion unnecessary. We have carefully considered each of appellants' six original points, as well as the points raised by appellants in rebuttal, and have concluded that all such points should be overruled, and it is so ordered.

The judgment of the trial court is accordingly affirmed.