STEWMAN RANCH, INC.;
O.T. Stewman; and Helen
Stewman, Appellants,

v.

DOUBLE M. RANCH, LTD., Appellee.

No. 11–04–00258–CV.

Court of Appeals of Texas,
Eastland.

April 13, 2006.

Rehearing Overruled June 29, 2006.

David C. Hall, Lance Hall, Hall Law Office, Sweetwater, for appellants.

Roderick E. Wetsel, H. Alan Carmichael, Steakley, Wetsel & Carmichael, L.L.P., Sweetwater, for appellee.

Panel consists of WRIGHT, C.J., and STRANGE, J., and DICKENSON, S.J.[1]

1. Bob Dickenson, Senior Justice, Court of Appeals, 11th District of Texas at Eastland sit-

## OPINION

JIM R. WRIGHT, Chief Justice.

The interpretation of the parties' intent in a royalty reservation is at the center of this appeal. The reservation appears in a warranty deed from Stewman Ranch, Inc.; O.T. Stewman; and Helen Stewman (the Stewmans) to Double M. Ranch, Ltd. By summary judgment, the trial court held that the Stewmans reserved one-half of the royalty interests owned by the Stewmans at the time of the conveyance rather than one-half of the total royalty. Because we find that the trial court correctly interpreted the warranty deed, we affirm.

The Stewmans conveyed approximately 8,900 acres by warranty deed to Double M. The deed contained reservations for recorded oil, gas, and mineral leases and other recorded reservations of minerals and royalties. The deed also contained the following reservation:

> There is, however, excepted and reserved to the Grantors an undivided one-half (½) of the royalties to be paid on the production of oil, gas and other hydrocarbons from the described lands which are presently owned by Grantors for and during the lives of Helen A. Stewman and O.T. Stewman, Jr.; and, upon the death of the survivor of them, this retained royalty interest will vest in Grantee, its successors and assigns.

The Stewmans did not own 100% of the royalty interests but, rather, owned undivided interests of varying amounts under the several tracts conveyed. Subsequently, a dispute arose between the parties regarding ownership of the royalties. The Stewmans contended they had reserved one-half of the total mineral interests under the property, while Double M. claimed that the reservation was of one-half of the

royalty interests owned by the Stewmans at the time of the conveyance.

The parties agree that the deed is unambiguous. The determination we are to make, as a matter of law, is whether the Stewmans reserved one-half of all the royalty attributable to "the described lands" or only one-half of the royalty they owned at the time of the conveyance.

 The interpretation of an unambiguous document is a question of law. We review the trial court's decision de novo. *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999). We perform that review without considering parol evidence. *Middleton v. Broussard*, 504 S.W.2d 839 (Tex.1974). We consider the entire document under the "four corners" rule. *See JVA Operating Co. v. Kaiser–Francis Oil Co.*, 11 S.W.3d 504, 506 (Tex.App.-Eastland 2000, pet. denied). To determine the parties' intention, we look only at what the parties actually stated in the deed, not what they allegedly meant. *See Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536, 544 (Tex. App.-Houston [14th Dist.] 1999, pet. denied).

 The court's primary concern is to ascertain the true intention of the parties. *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex.1962). We must assume that the parties intended every clause to have effect; and, if the terms appear contradictory, we must harmonize them so that no provision is rendered meaningless. *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518–19 (Tex.1980). We are to give the language its plain grammatical meaning unless to do so would defeat the parties' intent. *DeWitt County Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 101 (Tex.1999).

ting by assignment.

■ Double M. urges us to consider canons that have been developed for interpreting deeds and reservations. For example, courts have held that deeds should be construed to convey the greatest estate possible and that reservations should be construed against the grantor. These canons, however, do not apply when the deed is unambiguous. *See Gore Oil Co. v. Roosth,* 158 S.W.3d 596, 601 (Tex.App.-Eastland 2005, no pet.) (utilizing canons of construction only after finding warranty deed ambiguous); *Large v. T. Mayfield, Inc.,* 646 S.W.2d 292, 294 (Tex.App.-Eastland 1983, writ ref'd n.r.e.); *see also* Bruce M. Kramer, *The Sisyphean Task of Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of Construction,* 24 TEX. TECH L.REV. 1, 110–11 (1993).

Double M. argues that this case can be resolved using the rule adopted in *Duhig v. Peavy–Moore Lumber Co.,* 135 Tex. 503, 144 S.W.2d 878 (1940). In that case, Duhig owned a tract of land and one-half of the underlying minerals. Duhig assigned the land by warranty deed. The deed purported to convey all of the surface and minerals, but it also contained a reservation to the grantor of one-half of the mineral estate. Peavy–Moore ultimately acquired the tract. A dispute arose between it and Duhig's descendants over the ownership of the mineral estate. The parties agreed that one-half of the mineral estate was owned by a third party. Duhig's descendants contended that the mineral reservation vested them with the remaining one-half. If correct, Duhig's deed transferred no mineral interest despite the language of its granting clause. The supreme court held that Duhig's descendants were estopped from claiming any of the mineral estate and that Peavy–Moore owned the disputed one-half mineral interest. Double M. contends that the Stewmans are likewise estopped from taking their present position.

■ *Duhig* is inapplicable to this case because there has been no failure of title. There is a dispute over the interpretation of the mineral reservation, but not all deed construction disputes constitute a breach of warranty. The warranty serves to indemnify the purchaser against a loss or injury he may sustain by a defect in the seller's title. *Gibson v. Turner,* 156 Tex. 289, 294 S.W.2d 781, 788 (1956). The warranty clause does not convey title nor does it determine the character of the title conveyed. *Davis v. Andrews,* 361 S.W.2d 419, 424–25 (Tex.Civ.App.-Dallas 1962, writ ref'd n.r.e.). Rather, it warrants that the same estate or any right, title, or interest therein has not been conveyed to any person other than the grantee and that the property is free from encumbrances. *Chapman v. Parks,* 347 S.W.2d 805, 808 (Tex.Civ.App.-Amarillo 1961, writ ref'd n.r.e.).

■ Double M.'s *Duhig* argument relies, in part, on the work of its landman, who researched the title to determine what royalty the parties would receive under each of the proffered constructions. Double M. contends that the parties agreed to split the Stewmans' royalty but that, if the reservation is interpreted to reserve one-half of the total royalty, Double M. will receive no royalty under some tracts and only a minimal interest under the remainder. The parol evidence rule bars our consideration of this analysis because both parties agree that the deed is unambiguous. *Messer v. Johnson,* 422 S.W.2d 908, 912 (Tex.1968); *see also Concord Oil Co. v. Pennzoil Exploration and Prod. Co.,* 966 S.W.2d 451, 465 (Tex.1998).

Unlike *Duhig,* the Stewmans' deed did not purport to convey title that the grantors did not own. The deed here specifically provided that it was subject to the exceptions and reservations contained in it,

and those were set out in four paragraphs of the deed. Consequently, the title that the Stewmans warranted did not include any interest specifically excepted or reserved. *Duhig* does not apply.

The Stewmans argue that this issue can be resolved by determining whether the reservation refers to "the described lands" or the "conveyed lands." The Stewmans' argument is based upon a rule of construction developed from two decisions: *Hooks v. Neill*, 21 S.W.2d 532 (Tex.Civ.App.-Galveston 1929, writ ref'd), and *King v. First Nat'l Bank of Wichita Falls*, 144 Tex. 583, 192 S.W.2d 260 (1946). In *Hooks*, the grantor reserved a fraction of the minerals under the land *conveyed*. Consequently, the deed reserved a fraction of the mineral estate conveyed in the deed. In *King*, the deed reserved a fraction of the minerals under the land *described*. That deed, therefore, reserved a fraction of the entire mineral estate. The Stewmans argue that the reservation refers to the land described in the warranty deed and that, therefore, they reserved one-half of the royalty attributable to the entire property.

This case does not fit within the rule developed by *Hooks* and *King* because of the unique language contained in the reservation. The difficulty lies with the inclusion of the words: "which are presently owned by Grantors." If this clause modifies the preceding words: "the described lands," then the reservation operates to reserve one-half of the total royalties. The Stewman deed describes the tracts being conveyed by survey, abstract, and certificate number. No other interest is similarly described. Under this interpretation, one-half of the royalties from "the described lands" would necessarily mean one-half of the total royalty. If the clause modifies "royalties to be paid," then the reservation means that the Stewmans retained only one-half of the royalty they owned at the time of the conveyance.

[12] Because the Stewmans owned the surface acreage being conveyed, as well as some of the underlying minerals, the clause "which are presently owned by Grantors" logically could refer to either "the described lands" or to "one-half (½) of the royalties to be paid." To determine whether the clause "which are presently owned by Grantors" modifies "royalties" or "the described lands," we refer to basic rules of grammatical construction. *See Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex.1987). A court shall give a contract its plain meaning, if possible. *Id.*

 One of the basic rules of grammatical construction is the doctrine of last antecedent. That doctrine provides that relative and qualifying phrases are to be applied to the words or phrases immediately preceding them, unless to do so would impair the meaning of the sentence. *City of Corsicana v. Willmann*, 147 Tex. 377, 216 S.W.2d 175, 176 (1949). The rule is not inflexible, and neither is it controlling. *Id.* The rule must be applied with due regard to the entire instrument. *Id.* The relative or qualifying phrases may be extended further than the nearest antecedent when clearly required. *Id.*

 Here, "which are presently owned by Grantors" is a restrictive dependent clause even though it begins with the word "which." We note that the clause is not set off by commas, as is the case with a nondescriptive or nonrestrictive clause. Although punctuation is not controlling in the interpretation of agreements, it does aid in the interpretation of an instrument. *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). There is no prohibition which requires a court to ignore punctuation. *Id.* The clause is a descriptive, or restrictive,

one because any other reading would render the clause superfluous. There would be no need to fully describe the lands, to refer to reservations and exceptions, and to then add a nonrestrictive clause after "the described lands." If the clause were removed, the sentence would not change. A restrictive clause signals that there are other things in the universe it defines. A nonrestrictive clause is a signal that there are no other things in the universe described. THE CHICAGO MANUAL OF STYLE 249–50 (15th ed. 2003); THE AMERICAN HERITAGE BOOK OF ENGLISH USAGE 39 (1996). Thus, because we would render the use of "which are presently owned by Grantors" superfluous if we were to find that it modifies "the described lands," we must find a reference that would render the clause meaningful. As the court said in *Willmann,* "We cannot ascribe" a "futile" or "vain" purpose to the words of the agreement. *Willmann,* 216 S.W.2d at 176–77.

If we apply the dependent clause "which are presently owned by Grantors" to the phrase "one-half (½) of the royalties," then we have harmonized and have given effect to every part of the agreement; and the clause is not futile, vain, or superfluous. *Id.* The question before this court is: "What royalties?" Because the dependent clause is an adjective clause, it answers that question in this manner: the royalties that are presently owned by grantor and that are to be paid on the production of oil, gas, and other hydrocarbons from the described lands. In this manner, we have given effect to every word in the agreement in its plain grammatical manner. Simply to apply the doctrine of last antecedent would impair what we perceive the parties actually meant when they made the agreement.

We hold that the clause "which are presently owned by Grantors" refers to and defines "one-half (½) of the royalties" and

that the Stewmans reserved a life estate in one-half of the royalties that they owned at the time of the conveyance, not one-half of the total royalties.

The Stewmans' issue on appeal is overruled, and the judgment of the trial court is affirmed.