SPARTAN TEXAS SIX CAPITAL PARTNERS, LTD., Spartan Texas Six–Celina, Ltd., and Dion Menser, Appellants/Cross–Appellees

v.

Gary Don PERRYMAN, Nancy K. Perryman, and Leasha Perryman Bowden, Appellees/Cross–Appellants

NO. 14–14–00873–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed March 1, 2016

Rehearing Overruled June 7, 2016

Rehearing En Banc Overruled August 30, 2016

C. Henry Kollenberg, Houston, TX, for appellant.

Ronald L. Yandell, Mineral Wells, TX, Lawrence F. Labanowski, Houston, TX, for appellee.

Panel consists of Justices Jamison, McCally, and Wise.

## OPINION

Sharon McCally, Justice

In this oil and gas royalty dispute, appellants/cross-appellees Spartan Texas Six Capital Partners, Ltd. and Spartan Texas–Six Celina, Ltd. (collectively, Spartan) and Dion Menser (Menser) challenge the trial court's judgment in favor of appellees/cross-appellants Gary Don Perryman (Gary), Nancy K. Perryman (Nancy), and Leasha Perryman Bowden (Leasha).[1] Spartan and Menser (collectively, Appellants) assert that: (1) Gary and Nancy (collectively, the Perrymans), both individually and through their company, GNP, Inc., failed to mention any prior convey-ances of a one-half royalty interest in the various deed conveyances in this case, so they are estopped from claiming a one-half royalty interest in the subject property to Appellants' predecessors in interest under *Duhig v. Peavy–Moore Lumber Co.,* 135 Tex. 503, 144 S.W.2d 878 (1940); (2) alternatively, the Perrymans own no royalty interest in the subject property because a 1986 royalty deed conveyed *all* of GNP's royalty interest to Appellants' predecessors in interest; (3) Gary failed to disclose an inherited interest in the subject property in his 1984 bankruptcy case and both he and Nancy are judicially estopped from asserting a claim to this asset now; and (4) the trial court incorrectly described the subject property in the final judgment. In two conditional cross-issues, the Perrymans urge that the trial court erred in (1) denying their motion to transfer venue to Montague County, and (2) failing to hold that they acquired title to the royalty interest at issue by limitations.

We agree that *Duhig* applies to the facts of this case, sustain Appellants' first issue, and determine that the Perrymans are estopped from claiming a royalty interest in the subject property under the *Duhig* doctrine. However, we hold that the trial court did not err in determining that judicial estoppel does not apply to the facts of this case; thus, Gary is not barred by this doctrine from claiming a 1/4 royalty interest inherited through his father's estate. We overrule Appellants' other three issues. We further overrule the Perrymans' conditional cross-issues. We thus modify

1. EOG Resources, Inc., which was a party to the judgment in the trial court, filed an appellee's brief in this appeal. Appellants Spartan and Menser filed a motion to strike EOG Resources' brief, urging that EOG Resources has no interest in the issues presented in this appeal. We agree; all disputes between EOG Resources, Spartan, and Menser were settled and severed from this case in the trial court. Our rules of appellate procedure define an "appellee" as "a party adverse to an appellant." Tex. R. App. P. 3.1(c). Because there are no remaining disputes between Spartan and Menser, as appellants, and EOG Resources, EOG Resources is not "adverse" to an appellant—i.e., it is not an "appellee" under our rules. Thus, we grant the motion to strike EOG Resources' brief and remove EOG Resources from the style of this appeal.

the trial court's judgment to reflect that Menser, Spartan, and Gary each own a 1/4 royalty in Tract One of the subject property. We affirm the judgment as so modified.[2]

## I. BACKGROUND

### A. Introduction

This oil and gas dispute arises from horizontal drilling in the Barnett Shale in Montague County, Texas. It began as a breach-of-contract suit by the mineral owners, Appellants, who had signed oil and gas leases, against an exploration company, EOG Resources. EOG Resources had drilled horizontal wells under Appellants' land. Appellants asserted that EOG Resources had drilled these wells and unitized and pooled their lands with other lands, despite EOG Resources not having obtained their permission as required by the leases. EOG Resources joined third-party defendants, Gary, Nancy, and Leasha; EOG brought a third-party claim seeking a declaration regarding who owned the royalty interests in the property covered by the leases as between Appellants, Gary, Nancy, and Leasha. Gary, Nancy, and Leasha, as third-party defendants and counterclaimants and subject to a motion to transfer venue, filed a declaratory judgment action to quiet title, seeking a declaration that they collectively owned 7/8 of the 1/4 royalty in the leased property, as well as attorney's fees. In response to the third-party defendants' counterclaims, Appellants filed a general denial, asserted various affirmative defenses including judicial estoppel, and alleged they were entitled to attorney's fees under the Declaratory Judgments Act.[3]

Appellants settled their disputes with EOG Resources. The claims between these parties have been severed and are not part of this appeal. The dispute in this appeal involves the claims by Gary, Nancy, and Leasha to a portion of the royalties to be paid under the Appellants' leases.[4] Because Gary, Nancy, and Leasha claim their royalty interests under a series of conveyances, we begin with a review of the pertinent facts of these conveyances.

### B. The Conveyances

In 1977, Benjamin Perryman sold approximately 480 acres in Montague County to his son Gary and Gary's wife, Nancy. The deed (Benjamin's Deed) describes the property conveyed in three tracts by a metes and bounds description of each tract. Although all three tracts are in the John Deck Survey, the first tract is separated from the other two by an intervening tract. This tract is described as 177 acres, more or less, and is part of the property subject to this dispute (hereafter, "Benjamin's Deed First Tract"); Appellants claim no interest in the second and third tracts described in Benjamin's Deed. The following paragraph appears at the end of the legal description conveying the three tracts in Benjamin's Deed:

> LESS, SAVE AND EXCEPT an undivided one-half (1/2) of all royalties from the production of oil, gas and/or other minerals that may be produced from the above described premises which are now owned by Grantor. It being understood hereby that all of the rest of my owner-

---

**2.** Much of the judgment concerns only disputes between EOG Resources, the Perrymans, and Leasha.

**3.** *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011.

**4.** Appellants do not dispute that Leasha is entitled to a 1/4 royalty interest in a portion of the leased property, although they do dispute the property description included in the judgment.

ship in and to the mineral estate in and under the above described lands is being conveyed hereby.

In 1980, Benjamin died intestate, and his two sons, Gary and Wade Perryman each inherited a 1/4 royalty interest.

In 1983, the Perrymans conveyed the entire 480 acres of land to an entity they formed, GNP, Inc. This conveyance was made subject to four listed liens, "together with any other liens covering the herein described property not specifically mentioned herein, but appearing of record in the Records of Montague County, Texas." This deed (the Perrymans' Deed) contains the identical metes and bounds description of the three tracts of land provided in Benjamin's Deed. Additionally, after the legal description, the following nearly identical reservation provides:

> LESS, SAVE AND EXCEPT an undivided one-half (1/2) of all royalties from the production of oil, gas and/or minerals that may be produced from the above described premises which are now owned by Grantor. It being understood that all of the rest of my ownership in and to the mineral estate in and under the above described lands is being conveyed hereby.

The Perrymans' Deed contained the following warranty language following the property description and reservation:

> TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said GNP, Inc. its successor and assigns forever and we do hereby bind ourselves and our heirs, executors and administrators, to Warrant and Forever Defend, all and singular the said premises unto the said GNP, Inc., its successors and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

In turn, GNP, through its officers Gary and Nancy, executed a deed of trust conveying this same property with the same reservation language through a Deed of Trust to Gainesville National Bank (GNP's Deed of Trust). GNP's Deed of Trust secured GNP's debt to the bank of roughly $700,000. In GNP's Deed of Trust, GNP bound itself "to warrant and forever defend the title to the Mortgaged Premises, or any part thereof, unto the Trustee against all persons whomsoever claiming or to claim the same or any part thereof." GNP was unable to pay the note and declared bankruptcy in December 1984.

About two years later, the bank and GNP filed an agreed order to lift the stay in GNP's bankruptcy case and announced that they had agreed as follows:

1. The Movant [bank] has a valid security interest in and to all land, livestock, crops, seed, farm equipment, machinery and vehicles owned by the Debtor [GNP];

2. The Debtor is indebted to the Movant in the amount of $844,133.33 as of October 18, 1985 with per diem interest at the rate of $211.11 per day and there is no equity in the collateral;

3. Gary Perryman has submitted an offer to the Debtor to purchase 200 acres of the Debtor's real property located in the John Deck Survey A–179, Montague County, Texas for a total purchase price of $240,000.00 .... The Movant has agreed to finance Mr. Perryman in the purchase of the real property upon terms acceptable to Mr. Perryman, with the Movant retaining a purchase money first lien on the property;

4. The Debtor agrees to abandon all remaining real property in the John

Deck Survey A–179, Montague County, Texas to Movant subject to any prior liens of the United States Small Business Administration. . . .

The bankruptcy court approved this agreed order; however, the Perrymans ultimately purchased only 125 acres of land, with the bank providing financing. This 125 acres is not part of Benjamin's Deed First Tract; it is contained in the second and third tracts described in Benjamin's Deed.

Shortly after GNP, Gary, Nancy, and the bank reached this agreement regarding the 125 acres, the bank foreclosed on the rest of GNP's property as described in the GNP Deed of Trust. This property was conveyed to the bank, as the highest bidder at the foreclosure sale, via a trustee's deed. This deed included the same legal description of the three tracts of land described initially in Benjamin's Deed. The following language follows the metes and bounds descriptions of the three tracts:

*LESS AND EXCEPT* : There is excepted herefrom 125 acres tract which is under contract for sale being described as follows to wit:

A 125.00 acres tract of land in the John Deck Survey A–179, Montague County, Texas and being part of the Second and Third Tracts described in [Benjamin's Deed] to Gary Perryman as recorded in Volume 688, Page 876, deed Records, Montague County, Texas . . . .
*LESS, SAVE AND EXCEPT* an undivided one-half (1/2) of all royalties from the production of oil, gas and/or other minerals that may be produced from the above described premises which are now owned by Gary Perryman, it being understood that all of the rest of my ownership in and to the mineral estate in

and under the above described lands is being conveyed hereby.

The trustee's deed concludes with the following warranty:

TO HAVE AND TO HOLD the property, together with all and singular, the rights and appurtenances thereto and in any wise belonging to the Gainesville National Bank in Gainesville, Texas and its successors and assigns forever and for, and on behalf the said G.N.P., Inc., grantor in said Deed of Trust, and as its successor and assigns, [the Trustee does] hereby bind the said G.N.P., Inc. and its successors and assigns, to warrant and forever defend, all and singular, the property hereinbefore described, insofar as authorized by the Deed of Trust unto the Gainesville National Bank in Gainesville, Texas and its successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

In June 1987, the bank conveyed by warranty deed with vendor's lien three tracts of land to David Johnson and his then-wife, Dion (now known as Dion Menser). The three tracts of land in this deed are described as "97.88 acres of land, more or less," "100.00 acres of land, more or less," and "8.51 acres, more or less," all being part "of the First Tract described in deed to Gary Perryman, as recorded in Volume 688, page 876, Deed Records of Montague County," and each followed by particular metes and bounds descriptions. The deed recorded in Volume 688, page 876 is Benjamin's Deed; thus it appears that, although these tracts add up to slightly over 206 acres, they may comprise Benjamin's Deed First Tract, which was described as "177 acres of land, more or less." [5] This conveyance was made subject

**5.** However, Gary signed an affidavit in September 2013 in support of his summary judgment motion in which he stated that Benjamin's Deed First Tract, which was described

to "all presently recorded restrictions, reservations, covenants, conditions, oil and gas leases, mineral severances, and other instruments, other than liens and conveyances ... that affect the property." Johnson and Menser later divorced; Menser conveyed by special warranty deed her interest in the tracts of land back to Johnson, but she reserved an undivided one-half interest in the mineral estate. This conveyance was made "subject to the terms of any valid oil and gas lease, valid oil, gas and mineral severance, valid easement, restriction or zoning ordinance, to the extent same may appear of record and may be in force and effect, covering or describing the aforesaid land or any part thereof."

In January 2003, Johnson conveyed 177.28 acres of land out of Benjamin's Deed First Tract by warranty deed to Spartan. This conveyance expressly excepts "all presently recorded restrictions, reservations, covenants, conditions, oil and gas leases, mineral severances, and other instruments, other than liens and conveyances, that effect the property; and any discrepancies, conflicts, or shortages in area or boundary lines."

## C. Gary's Bankruptcy

Gary filed for bankruptcy relief in May 1988; Nancy did not join the filing. Gary did not disclose any royalty interest he may have had in the land described in Benjamin's Deed in the liquidation analysis he completed as part of the bankruptcy proceedings.

## D. Appellants Lease the Subject Property

The parties agree that Appellants own 100% of the mineral estate under Benjamin's Deed First Tract and that they hold all the executive rights to this estate. In September 2007, Spartan leased its 177.28 acres from Benjamin's Deed First Tract to Wynn–Crosby Partners, Ltd.; Menser also leased an additional 28.55 acres to Wynn–Crosby.[6] These leases were later assigned to EOG Resources. EOG Resources accessed the oil and gas under the leased property through the use of horizontal drilling.

A dispute arose between Appellants, on the one hand, and EOG Resources, on the other, regarding the leases. In May 2011, Appellants sued EOG Resources under the leases, focusing on EOG Resources' conduct in horizontally drilling numerous wells across their property and including the property in pooling units without their written permission. Appellants sought to recover from EOG Resources all sums they were due under the leases. EOG Resources joined Gary, Nancy, and Leasha as third-party defendants over Appellants' objection and filed a third-party claim for declaratory relief, seeking a declaration regarding the royalty interests to the property as between Appellants, Gary, Nancy, and Leasha. These third-party defendants filed a motion to transfer venue to Montague County and, subject to the motion, their answer and cross-claim against Appellants seeking a declaration of their rights to royalties under the leases. The trial court denied the motion to transfer venue.[7]

---

as 177 acres, more or less, is now described as "178.25 acres" and is the subject of this suit.

6. The parties disagree about whether this additional acreage is from Benjamin's Deed First Tract. Appellants contend that it is not a part of this dispute and should not be in-

cluded in the judgment, but the Perrymans assert that it part of Benjamin's Deed First Tract and the trial court properly included it in its judgment.

7. The Perrymans and Leasha filed a petition for writ of mandamus in this court, challenging the trial court's denial of their motion to

Appellants and EOG Resources settled their dispute through mediation. The trial court signed an order of dismissal with respect to all claims between these parties in April 2014; EOG filed a motion to sever claims between it and Appellants, which Appellants opposed. The trial court granted the severance on May 12, 2014. Thus the claims between Appellants and EOG Resources are not part of this appeal. The disputes between Appellants, Gary, Nancy, and Leasha were resolved through summary judgment proceedings.

**E. The Summary Judgment Proceedings**

Leasha filed a motion for summary judgment in January 2014, in which she sought a declaration that she owned a 1/4 interest in the royalty in Benjamin's Deed First Tract. As noted above, Benjamin died intestate in 1980, leaving two sons, Gary and Wade Perryman, as his only heirs. Wade died intestate in 2008, leaving one child, Leasha. Leasha claims all of Wade's 1/2 of the 1/2 royalty reserved in Benjamin's Deed, i.e., a 1/4 royalty interest. Appellants responded to Leasha's summary judgment motion and did not dispute Leasha's arithmetic, but asserted that her interest was limited to Benjamin's Deed First Tract.

In March 2014, Gary and Nancy each filed traditional partial summary judgment motions seeking declarations (1) of their respective royalty interests in Benjamin's Deed First Tract; (2) that *Duhig*[8] has no application to the deeds and transfers in this case; (3) that judicial estoppel has no application under the facts of this

case; and (4) that a "Mother Hubbard" clause in a 1986 royalty deed conveying the mineral interests in the Perrymans' 125 acre tract to the Bank did not operate to pass their royalty interest in Benjamin's Deed First Tract to Appellants. Appellants responded to Gary's and Nancy's summary judgment motions, asserting that judicial estoppel, *Duhig*, and the royalty deed operated to prevent the Perrymans from claiming any royalty interest in Benjamin's Deed First Tract. Appellants then filed their own traditional and no evidence motion for summary judgment, asking the court to grant judgment that the Perrymans own no royalty interest in Benjamin's Deed First Tract on these same grounds. On April 14, the trial court signed an interlocutory order granting Appellants' summary judgment motion and adjudging that "Gary and Nancy Perryman have no interest in the property at issue in this case or the royalties under the Leases."

As noted above, Appellants and EOG Resources settled their claims through mediation. In late April, the trial court signed an order granting partial dismissal with prejudice of the claims between EOG Resources and Appellants. This order noted that "there is no settlement as to claims or counterclaims involving Third Party Defendants Gary Don Perryman, Nancy K. Perryman, and Leasha Perryman Bowden." This order provided that "all claims and counterclaims between Plaintiffs [Appellants] and EOG Resources, Inc. are hereby dismissed with prejudice." On May 12, the trial court signed an order severing the "claims as-

transfer venue. *See In re Perryman*, No. 14–13–00131–CV, 2013 WL 1384914, at *1 (Tex. App.–Houston [14th Dist.] Apr. 4, 2013, orig. proceeding). We denied their petition. *See id.* at *1–3. The Supreme Court of Texas also denied their petition for writ of mandamus. *See In re Perryman*, No. 13–0346 (Tex.2013)

(orig.proceeding), *available at* http://www. search.txcourts.gov/Case.aspx?cn=13–0346& coa=cossup.

8. *Duhig v. Peavy–Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878, 880–81 (1940).

serted in this lawsuit as between Plaintiffs, [Appellants], and Defendant, EOG Resources, Inc., all of which have been settled." The severed lawsuit was assigned a separate cause number, 2011–27476–A, and the severance order explicitly provided that the severed cause "is now final." At that time, there remained pending claims for attorney's fees between EOG Resources and Gary, Nancy, and Leasha.

In late May, the Perrymans moved for entry of judgment. In their motion, they also sought, as is relevant here, reconsideration of the trial court's April 14 summary judgment order in favor of Appellants. Appellants filed a "statement regarding unresolved issues and motions for summary judgment," in which they identified the following summary judgment orders:

- Order granting Leasha Bowden's Motion for Summary Judgment, signed March 12, 2012.
- Order granting EOG's Motion for Partial Summary Judgment Against Gary and Nancy Perryman and Leasha Perryman Bowden signed April 8, 2014.[9]
- Order granting [Appellants'] motion for summary judgment signed April 14, 2014.

Appellants noted, in pertinent part, that claims for attorney's fees were still outstanding by each of the parties and that they all had agreed to submit "the factual and legal decisions concerning attorneys' fees to the court to be decided on the basis of affidavits submitted by the parties."

In September, the trial court reconsidered the April 14 summary judgment order and reversed its prior decision; it instead granted Gary's and Nancy's summary judgment motions. In its final judgment signed on October 1, 2014, the court ordered as follows:

With regard to royalty payments under the Leases made the subject of this suit as to Tract One [the 178.28 acres], the Court further finds and declares that title to the royalty interest therein and therefore that reserved in the Leases is owned as follows:

| | |
|---|---|
| Dion Menser: | 3/32 of the royalty |
| Spartan Texas Six Celina – Ltd: | 3/32 of the royalty |
| Leasha Perryman Bowden: | 1/4 of the royalty |
| Gary Don Perryman and Nancy Perryman: | 9/16 of the royalty |

With regard to royalty payable to the parties under the Leases made the subject of this suit as to Tract Two [the 28.55 acres], the Court further finds and declares that title to the royalty interest therein and therefore that reserved in the Leases is owned as follows:

| | |
|---|---|
| Dion Menser: | 3/32 of the royalty |
| Leasha Perryman Bowden: | 8/32 of the royalty |
| Gary Don Perryman and Nancy Perryman: | 18/32 of the royalty |

The trial court further denied Appellants' request for attorney's fees and costs.[10]

9. No party challenges this summary judgment order in this appeal.

10. The trial court additionally awarded Leasha attorney's fees of $21,500 from EOG Re-

This appeal timely followed.

## II. STANDARD OF REVIEW

■ We review de novo the trial court's decision to grant a summary judgment. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex.2009). When reviewing cross-motions for summary judgment, we consider both motions and render the judgment that the trial court should have rendered. *Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001); *see also Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 153–54 (Tex.2010). When both parties move for summary judgment, each party must carry its own burden as movant. *See Dallas Cnty. Comm. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 871–72 (Tex. 2005).

■ The movant for a traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex.2009). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex.2005); *see also Appleton v. Appleton*, 76 S.W.3d 78, 83 (Tex.App.–Houston [14th Dist.] 2002, no pet.). We review the summary judgment evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable fact finders could, and disregarding contrary evidence unless reasonable fact finders could not. *Mann Frankfort*, 289 S.W.3d at 848.

sources and awarded EOG Resources $15,909.50 in attorney's fees from Leasha for their various claims against each other, but these awards are not at issue in this appeal.

## III. APPLICATION OF *DUHIG*

■ In Appellants' first issue, they urge that the trial court erred by disregarding *Duhig* and granting summary judgment to Gary and Nancy. They assert that the Perrymans' Deed and, in turn, GNP's Deed of Trust conveyed all the minerals subject only to a 1/2 reservation of royalty as stated in the deeds. Stated differently, Appellants contend that these deeds operated to *convey* a 1/2 royalty interest in Benjamin's Deed First Tract to their predecessors. We agree for the following reasons.

Here, both the Perrymans' Deed and GNP's Deed of Trust contain the following reservation after the metes and bounds description of the tracts being conveyed:

> LESS, SAVE AND EXCEPT an undivided one-half (1/2) of all royalties from the production of oil, gas and/or other minerals that may be produced from the above described premises which are now owned by Grantor. It being understood that all of the rest of my ownership in and to the mineral estate in and under the above described lands is being conveyed hereby.

Both deeds also contain general warranty language; i.e., they both state that the grantors bind themselves to "warrant and forever defend" title to the premises to the grantee.

Appellants assert that the *Duhig*[11] doctrine controls the construction of granting versus reserving language of the deed and, thus, the outcome in this case. In *Duhig*, W.J. Duhig purported to convey fee simple title to land by a general warranty deed and to reserve an undivided one-half mineral interest in the land. 144 S.W.2d at

11. 144 S.W.2d at 878.

878. However, on the date of the deed, one half of the minerals were outstanding to a third person—the estate of Alexander Gilmer. *Id.* The court held, under that fact situation, that: (1) the covenant of warranty extended to the surface of the land and one-half of the minerals; (2) there was a breach of the warranty; and (3) equity estopped Duhig and those claiming under him from asserting title against the grantee and those claiming under it. *Id.* at 880–81 ("Thus[,] the deed is so written that the general warranty extends to the full fee simple title to the land except an undivided one-half interest in the minerals."). The effect of the court's holding was to take the one-half mineral interest allegedly retained by Duhig and give it to the grantee to fulfill the covenant of general warranty. *Id.* at 880–81. Essentially, this allowed the grantee to get what it bargained and paid for, rather than having only a breach of warranty claim for damages. *See id.* at 880–81.

■ The general rule set forth in *Duhig* is:

[A] deed purporting to convey a fee simple or a lesser definite estate in land and containing covenants of general warranty of title or of ownership will operate to estop the grantor from asserting an after-acquired title or interest in the land, or against the estate which the deed purports to convey, as against the grantee and those claiming under him.

*Id.* at 880; *see Gutierrez v. Rodriguez,* 30 S.W.3d 558, 561 (Tex.App.–Texarkana 2000, no pet.); *Scarmardo v. Potter,* 613 S.W.2d 756, 759 (Tex.Civ.App.–Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Seydler v. Herder,* 361 S.W.2d 411, 414 (Tex.Civ. App.–El Paso 1962, writ ref'd n.r.e.) ("The general warranty deed from George Seydler to George Herder warranted the full fee simple title to George Herder. It con-

veyed all the title that Seydler had, and if he did not then have the full fee simple title, but later acquired it, then such title would pass *eo instante* to George Herder, and would relate back to the date of said warranty deed."). Or, in other words, a reservation in a deed is ineffective when, as a result of the grantor's title shortage, the conveyance and the reservation cannot both be given effect. *See Duhig,* 144 S.W.2d at 880 ("The deed, of course, does not actually convey what the grantor does not own.").

Further, in *Scarmardo v. Potter,* this court followed the estoppel rule set forth in *Duhig* to determine that a deed from Potter to Scarmardo that reserved only a 1/8 mineral interest, when previous deeds had reserved a 1/2 mineral interest, transferred to Scarmardo all of the mineral interest that Potter owned: "Under *Duhig,* Scarmardo is entitled to all of Potter's reserved interest. Since the reserved interest of Potter is insufficient to make Potter whole [i.e., provide Potter a 7/8 mineral interest], Scarmardo would have a cause of action in damages for breach of warranty for an additional undivided three-eighths of the mineral interest." *See* 613 S.W.2d at 758–59.

The *Duhig* rule appears to be applicable to the facts of this case. As described above, in the conveyances that resulted in the bank taking title to the property at issue in this dispute, the Perrymans purported to grant title to the land subject to a 1/2 royalty interest in the described property. There is no mention of Benjamin's previously excepted 1/2 royalty interest in this land in these deeds. These conveyances were made with general warranties of title. As in *Duhig,* these deeds are "so written that the general warranty extends to the full fee simple title to the land except an undivided one-half interest in the minerals." 144 S.W.2d at 880–81.

Thus, under the principles set forth in *Duhig* and its progeny, the Perrymans are estopped from claiming this 1/2 interest in this property because any other construction of these deeds would have resulted in an immediate title shortage and breach of their warranties. *See Duhig,* 144 S.W.2d at 880; *Scarmardo,* 613 S.W.2d at 748–59. Thus, the bank took title to this property subject to only the 1/2 royalty interest excepted by Benjamin's deed—i.e., it took title to, among other things, a 1/2 royalty interest. And when the bank later conveyed Benjamin's Deed First Tract to Johnson and Menser, it conveyed this 1/2 royalty interest to them.

In response, the Perrymans argue that *Duhig* does not apply to this case; instead, they assert only that the deeds "are limited to a fraction of what the grantor owned at the time of the conveyance." In support of this position, they rely largely on *Stewman Ranch v. Double M Ranch, Ltd.,* 192 S.W.3d 808 (Tex.App.–Eastland 2006, no pet.). First, we note that *Stewman Ranch* is not binding precedent on this court. Moreover, in *Stewman Ranch,* the deed explicitly contained reservations for recorded oil, gas, and other mineral leases and other recorded reservations of minerals and royalties. *See id.* at 810. Thus, the deed in *Stewman Ranch* notified the grantor of recorded reservations impacting title, obviating the *Duhig* rule. Here, as discussed above and as opposed to the deed in *Stewman Ranch,* neither of the deeds at issue notified the grantors of any recorded reservations. Thus, *Stewman Ranch* not only lacks precedential authority, it is readily distinguishable from the present case.

In sum, we are bound by both *Duhig* and our own precedent. Under this au-thority, the Perrymans conveyed their entire royalty interest in Benjamin's Deed First Tract to the bank. The Perrymans are estopped from claiming any royalty interest in this land conveyed through these deeds. We thus sustain Appellants' first issue and conclude that Appellants own all of the royalty under the leases covering this land, subject only to a 1/2 royalty reservation in Benjamin's Deed First Tract.

Because of our resolution of this issue, we need not address Appellants' second issue regarding the 1986 royalty deed because it is presented as an alternative theory of recovery should we overrule their first issue. We thus turn to their third issue relating to Gary's failure to disclose to the bankruptcy court the royalty interest he inherited through Benjamin's estate.

## IV. JUDICIAL ESTOPPEL

In their third issue, Appellants urge that Gary is precluded from claiming a royalty interest in Benjamin's Deed First Tract that Gary inherited when Benjamin died intestate.[12] Appellants assert that the doctrine of judicial estoppel prevents Gary from claiming this royalty because Gary filed for bankruptcy in 1988 and allegedly failed to disclose this asset in his bankruptcy filings. We begin by noting that Appellants, both at trial and on appeal, seemingly mistake the burden of proof on the doctrine of judicial estoppel. Appellants assert that the Perrymans failed to establish the elements of judicial estoppel as a matter of law. However, judicial estoppel is an affirmative defense on which Appellants, as the party pleading it as a bar to the Perrymans' counterclaim of a royalty interest, bore the burden of

12. As noted above, Benjamin was survived by two sons, Gary and Wade, who both inherited 1/2 of 1/2—i.e., 1/4—of the royalty excepted through Benjamin's Deed. Wade's daughter, Leasha, inherited Wade's 1/4 interest in this royalty.

proof. *See, e.g.,* Tex. R. Civ. P. 94 (listing estoppel as an affirmative defense to a preceding pleading); *Espinosa v. Aaron's Rents, Inc.,* No. 01–14–00843–CV, 484 S.W.3d 533, 540–42, 2016 WL 191944, at *5 (Tex.App.–Houston [1st Dist.] Jan. 14, 2016, no pet. h.) (describing judicial estoppel in the bankruptcy context as an affirmative defense to opposing party's suit). Appellants failed to meet their burden of proof to conclusively establish each element of this affirmative defense to the Perrymans' counterclaim. Tex. R. Civ. P. 166a(c); *Mann Frankfort,* 289 S.W.3d at 848; *see also McLernon v. Dynegy, Inc.,* 347 S.W.3d 315, 323 (Tex.App.–Houston [14th Dist.] 2011, no pet.) ("To prove entitlement to summary judgment on a counterclaim, the plaintiff must conclusively negate at least one element of the counterclaim *or conclusively establish each element of an affirmative defense to the counterclaim.*" (emphasis added)).

■■ Federal law applies to judicial estoppel issues when the first proceeding involved bankruptcy. *Bailey v. Barnhart Interest, Inc.,* 287 S.W.3d 906, 909 (Tex. App.–Houston [14th Dist.] 2009, no pet.). Judicial estoppel often operates to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy. *See, e.g., In re Coastal Plains, Inc.,* 179 F.3d 197, 205–08 (5th Cir.1999) (explaining judicial estoppel doctrine in the context of bankruptcy proceedings and emphasizing the importance of the debtor's duty of disclosure); *see also Stephenson v. LeBoeuf,* 16 S.W.3d 829, 841–42 (Tex.App.–Houston [14th Dist.] 2000, pet. denied). Judicial estoppel is designed to protect the judicial system, not the litigants, so detrimental reliance by the party opponent is not required. *In re Superior Crewboats, Inc.,* 374 F.3d 330, 334 (5th Cir.2004).

■ Judicial estoppel is generally invoked where intentional self-contradiction is being used to obtain an unfair advantage in a forum provided for suitors seeking justice. *Id.* at 334–35. The Fifth Circuit has recognized three requirements: (1) a party is judicially estopped only when its position is clearly inconsistent with its previous one; (2) the court must have accepted the previous position—the bankruptcy court must adopt the debtor's position either as a preliminary matter or as part of a final disposition; and (3) the party's non-disclosure must not have been inadvertent. *Id.* at 335. "Inadvertent" in this context means that the non-disclosure arises from either a lack of knowledge of the undisclosed claim or a lack of motive to conceal the claim. *Id.* "A motivation to conceal may be shown by evidence of a potential financial benefit that could result from concealment." *U.S. ex rel. Long v. GSDMidea City, L.L.C.,* 798 F.3d 265, 273 (5th Cir.2015).

Here, the trial court rejected Appellants' judicial estoppel arguments, and we agree for the following reasons. Gary asserted in his summary judgment response that he had no motive for concealment. His failure to disclose his royalty interest occurred more than twenty-five years ago. At the time of the bankruptcy proceedings, no leases were in place for the tract and no royalties had been generated for this interest. In fact, Gary had no right to lease the property because the executive rights belonged to others; without any leases, there could be no royalties. Our record indicates that no royalties were generated from Gary's interest until roughly twenty years *after* Gary's bankruptcy proceedings. Although Appellants assert in a conclusory fashion that "Gary stood to gain from shielding his assets from his creditors," there is no evidence in our record of a potential financial benefit to Gary that could have resulted from Gary's "shield-

ing" of this asset. *See id.* at 273. In other words, there is no evidence that at the time of his bankruptcy, Gary gained anything by failing to disclose this interest.[13] *Cf. Love v. Tyson Foods, Inc.,* 677 F.3d 258, 262 (5th Cir.2012) (noting that motivation is self-evident when there is a potential financial benefit or windfall to a debtor from an undisclosed claim). Thus, there is nothing in the record to support the "not inadvertent" element of a judicial estoppel defense.

■■■■ Finally, "trial courts are not *required* to apply [judicial estoppel] in every instance that they determine its elements have been met.... Rather, courts should determine if applying judicial estoppel is appropriate in light of the specific facts of each case and the doctrine's purpose of 'protect[ing] the integrity of the judicial process.'" *GSDMidea City, L.L.C.,* 798 F.3d at 271–72 (citations omitted). Here, Appellants have not cited,[14]

nor have we found, any cases applying the doctrine of judicial estoppel to bar a party from claiming an undisclosed bankruptcy "asset" that—at the time of the bankruptcy proceeding and for about twenty years thereafter—was a non-producing royalty interest only. They further have not cited, nor has our research revealed, any cases applying this doctrine when more than twenty-five years has passed between the bankruptcy proceedings and the assertion of judicial estoppel to bar the claim to an asset. Even if the elements of judicial estoppel are met in this case, in light of the length of time that has passed, the uncertainty concerning Gary's knowledge of his ownership of this royalty at the time he filed his bankruptcy petition, and the absence of evidence that he (a) had any financial motivation to conceal his ownership of this royalty interest at the time of his bankruptcy proceeding or (b) actually gained anything by concealing his ownership of the royalty at the time of his

13. Contrary to Appellants' position, Gary's testimony about whether he knew at the time he filed for bankruptcy that he owned the royalty interest in the First Tract is far from clear. In his deposition, he testified he did not believe that he owned any real property or any interest in real property after GNP filed for bankruptcy in 1984, which was several years before he filed his personal bankruptcy petition. He also testified, "I just don't remember that far back," when questioned about the specifics of his reorganization plan. He repeatedly said he did not remember things and that it had "been too long" to recall what he signed in his bankruptcy proceedings. Gary did respond "yes" to several direct questions asking him if he knew, when he filed his reorganization plan, that he owned a royalty interest in the First Tract. He further said that his failure to list the royalty interest in his bankruptcy liquidation plan was simply an "oversight." But when pressed for further details, he was unable to say when he discovered he owned the royalty interest or even on what basis his claim to the royalty interest arose. And, as explained above, inadvertence in the judicial

estoppel context may arise from a lack of knowledge. *In re Superior Crewboats,* 374 F.3d at 335. At a minimum, Gary's deposition testimony raised a fact issue about whether he lacked knowledge about the royalty interest when he filed for bankruptcy.

14. The majority of cases cited by Appellants discuss judicial estoppel in the bankruptcy context as a bar to a debtor seeking to pursue legal claims against a defendant that were not disclosed during a bankruptcy proceeding. *See In re Flugence,* 738 F.3d 126, 128 (5th Cir.2013) (subst. op. on reh'g); *Love,* 677 F.3d at 260–61; *Jethroe v. Omnova Solutions, Inc.,* 412 F.3d 598, 599 (5th Cir.2005); *In re Superior Crewboats,* 374 F.3d at 333–34; *In re Coastal Plains,* 179 F.3d at 201–02; *Bailey v. Barnhart Interest, Inc.,* 287 S.W.3d 906, 907–08 (Tex.App.–Houston [14th Dist.] 2009, no pet.); *Jackson v. Hancock & Canada, L.L.P.,* 245 S.W.3d 51, 53–54 (Tex.App.–Amarillo 2007, pet. denied); *Cleaver v. Cleaver,* 140 S.W.3d 771, 775 (Tex.App.–Tyler 2004, no pet.); *Dallas Sales Co. v. Carlisle Silver Co.,* 134 S.W.3d 928, 929–33 (Tex.App.–Waco 2004, pet. denied).

bankruptcy proceeding, applying judicial estoppel to the facts of this case would not further the doctrine's purpose of protecting the integrity of the judicial process. *See GSDMidea City, L.L.C.*, 798 F.3d at 271–72.

In light of the foregoing, we conclude that applying judicial estoppel to bar Gary from asserting his inherited royalty interest was not appropriate in this case, and the trial court did not err in denying Appellants' summary judgment motion. For the foregoing reasons, we overrule Appellants' third issue.

## V. PROPERTY DESCRIPTION

■ In their fourth and final issue, Appellants assert that the trial court, after correctly describing the property in its order granting Leasha's summary judgment, erroneously described the property in the final judgment; i.e., they assert that Leasha is entitled to an interest in only the 178.28 acre Tract One in the final judgment. They further argue that the trial court's judgment improperly granted the Perrymans an interest in the 28.55 acre Tract Two in the final judgment. In short, Appellants urge that the trial court's judgment should limit any royalty interest granted to Leasha and the Perrymans to Benjamin's Deed First Tract, described in the judgment as Tract One, because the only summary judgment evidence provided by Leasha and the Perrymans involves

this tract of land. Appellants contend that insufficient evidence supports the grant of any royalty interest to Leasha, Gary, or Nancy for Tract Two.[15]

However, even if the trial court erroneously included Tract Two in its final judgment, Appellants did not object to the description of the land or the division of the royalty. *See* Tex. R. App. P. 33.1(a). They failed to notify the trial court about an error in this description or the royalty division, if any, by timely filing a motion to modify, correct, or reform the judgment. *See* Tex. R. Civ. P. 329b(g).

Because they failed to preserve this issue for our review, we overrule it. And having addressed all of Appellants' dispositive issues, we turn to the conditional cross-issues presented by the Perrymans.

## VI. THE PERRYMANS' CROSS-ISSUES

### A. Venue

■ In their first conditional cross-issue, the Perrymans assert that the trial court abused its discretion by denying their motion to transfer venue to Montague County. Assuming without deciding that a defendant may challenge the denial of a motion to transfer venue on direct appeal after an unsuccessful mandamus proceeding challenging that very same motion,[16] here the direct appeal is from a summary judgment without any apparent additional venue evidence.[17] Under these

---

**15.** It appears that Tract Two is the land leased by Menser. As noted above, the parties disagree about whether this additional acreage is part of Benjamin's Deed First Tract.

**16.** *See In re Perryman*, 2013 WL 1384914, at *2.

**17.** The absence of any new post-mandamus venue evidence is apparent by the Perrymans' sparse briefing on this issue: "The position of the Perrymans and the Appellants has been previously briefed in this Court in the mandamus action and is only summarized in this Brief." The Perrymans assert that Appellants' "amended pleadings and motion for summary judgment ultimately laid the title issue bare" and that Appellants' "motion for summary judgment makes a claim for title to royalty which simply could not have been brought against the Perrymans in Harris County." They do not direct us to a particular summary judgment motion filed by Appellants. They do not direct us to a pleading

circumstances, we hold that the prior venue determination made by this court in the mandamus proceeding is the law of the case.

We overrule the Perrymans' first cross-issue.

## B. Adverse Possession

 The Perrymans urge in their second cross-issue that the trial court erred by failing to hold that they had acquired title to the royalty at issue through adverse possession. However, as noted by Appellants in their reply brief, the Perrymans have not cited any authority in support of their adverse possession argument. "The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). "Parties asserting error on appeal must put forth some specific argument and analysis showing that the record *and the law* support their contentions." *Fox v. Alberto*, 455 S.W.3d 659, 664 (Tex.App.–Houston [14th Dist.] 2014, pet. denied) (citing *Mojtahedi v. BHV Realty, Inc.*, No. 14–05–01101–CV, 2007 WL 763813, at *4 (Tex.App.–Houston [14th Dist.] Mar. 15, 2007, no pet.) (mem.op.)).

Because this issue is inadequately briefed, we overrule it.

## VII. Conclusion

We have sustained Appellants' first issue and have concluded that, under the *Duhig* doctrine, Gary and Nancy are estopped from claiming a royalty interest in Tract One as described in the judgment. Accordingly, Appellants own all of the royalty interest under the leases covering this land, subject only to the 1/2 royalty reservation in Benjamin's Deed. This 1/2 royalty reservation was inherited by Benjamin's heirs, Gary and Leasha. Gary and Leasha thus each own a 1/4 royalty interest in this tract. We have overruled Appellants' third issue and hold that Gary is not judicially estopped from claiming his interest this tract. We have further overruled Appellants' fourth issue in which they challenge the trial court's inclusion of Tract Two in the judgment. Finally, we have overruled the Perrymans' conditional cross-issues.

Accordingly, we modify that portion of the judgment beginning with the last paragraph on page 5 by replacing the language with the following:

With regard to royalty payable to the parties under the Leases made the subject of this suit as to Tract One, the Court further finds and declares that title to the royalty interest therein and therefore that reserved in the Leases is owned as follows:

| | |
|---|---|
| Dion Menser: | 1/4 of the royalty |
| Spartan Texas Six Celina – Ltd.: | 1/4 of the royalty |
| Leasha Perryman Bowden: | 1/4 of the royalty |
| Gary Don Perryman: | 1/4 of the royalty |

With regard to royalty payable to the parties under the Leases made the subject of this suit as to Tract Two, the Court further finds and declares that

---

filed by Appellants in which Appellants make a claim for title or to a royalty. In fact, the only citations to the record contained in this section of the Perrymans' brief are to the Perrymans' motion to transfer venue and the trial court's order denying the motion.

title to the royalty interest therein and therefore that reserved in the Leases is owned as follows:

| | |
|---|---|
| Dion Menser | 3/32 of the royalty |
| Leasha Perryman Bowden | 8/32 of the royalty |
| Gary Don Perryman and Nancy Perryman | 18/32 of the royalty |

We affirm the judgment as so modified.

