# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 13, 2015

No. 14-10999

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA, ex rel, JOHNNY RAY (J.R.) LONG,

> Plaintiff – Appellant,

v.

GSDMIDEA CITY, L.L.C., a Delaware Limited Liability Company,

> Defendant – Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and KING and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This appeal arises from a *qui tam* action brought by Johnny Ray Long against GSD&M Idea City, LLC[1] for violations of the False Claims Act (FCA).[2]

---

[1] Appellee refers to itself as "GSD&M Idea City, LLC," the same entity name on file with the Delaware Department of State, however the CM/ECF caption in this case refers to the entity as "GSDMIdea City, L.L.C." For case administration purposes, we use the existing caption in our CM/ECF system, but will refer to the entity as "GSD&M" throughout this opinion.

[2] The False Claims Act allows private parties (called "relators") to bring claims on behalf of the United States against anyone who has submitted false or fraudulent claims to the government. *See* 31 U.S.C. § 3730(b). If a relator prevails, he is entitled to a percentage of the government's recovery. *See id.* § 3730(d). At no point during this lawsuit did the United States try to intervene on its own behalf.

No. 14-10999

At the time Long filed his FCA claims, he was the debtor in a confirmed Chapter 13 bankruptcy plan and he failed to disclose his FCA claims to the bankruptcy court. After discovering his failure to disclose, the district court dismissed Long's FCA claims under the doctrine of judicial estoppel. Long appealed, arguing that judicial estoppel should not apply because he had no motive to conceal his FCA claims from the bankruptcy court, especially given that his repayment plan required repaying 100% of the principal of his debts. Because the district court did not abuse its discretion in dismissing Long's claims, we AFFIRM.

## I.

Petitioner Johnny Ray Long filed this FCA lawsuit in June 2011 against his then-employer, GSD&M, alleging that GSD&M misrepresented its profits and overhead during contract negotiations with the United States Air Force (USAF). GSD&M received contracts in 2000 and 2008 from the USAF to develop advertising campaigns that would aid in the USAF's recruiting efforts. During negotiations, GSD&M submitted profit and overhead figures, certifying that they were "current, accurate, and complete." However, Long alleges that the figures were inaccurate because the figures inflated GSD&M's overhead rate and, in effect, underestimated the amount of profit GSD&M stood to make on the contracts. According to Long, the figures also inflated the additional fees GSD&M would receive on the contracts. In June 2011, while still employed at GSD&M, Long filed this lawsuit as a relator, alleging that GSD&M violated the FCA and defrauded the United States in its effort to obtain "stealth profits."

When Long filed his FCA claims, he was subject to a confirmed Chapter 13 bankruptcy plan, part of proceedings that he initiated in November 2008, and was paying debts according to this plan. Under Long's plan, which was

2

confirmed in January 2009, he had to repay $60,000 in unsecured claims over a five-year period.  Long was not required to repay any interest.  Long's bankruptcy plan also provided that "[u]pon confirmation of the plan, all property of the estate shall not vest in the Debtor(s), and shall remain as property of the estate subject to the automatic stay of 11 U.S.C. § 362." However, after discovering his FCA claims—which are considered property under the Bankruptcy Code—Long did not disclose the FCA claims to the bankruptcy court, the trustee of his estate, or his creditors.  In 2011, he filed the FCA claims in the district court and when his bankruptcy closed in October 2013, Long still had not informed the bankruptcy court of his claims against GSD&M.  Upon discharge of Long's debts, the bankruptcy trustee's final report indicated that Long was able to discharge $4,504.91 in unsecured claims without payment.

While his bankruptcy was pending, and continuing after its conclusion, Long pursued his FCA claims in the district court.  During that time, the district court ruled on several motions filed by both parties.  It granted, without prejudice, GSD&M's initial motion to dismiss, granted leave for Long to amend his complaint twice, and, pursuant to Rules 12(b)(6) and 9(b), ultimately dismissed with prejudice most of Long's FCA claims alleged in his second amended complaint.  The district court denied Long's motion for leave to file a third amended complaint, but allowed Long to continue pursuing his claims that were based on a fraudulent inducement theory.  The parties filed cross-motions for summary judgment regarding this claim.  The district court denied, in part, Long's motion for partial summary judgment, and denied GSD&M's motion.

Just before trial, GSD&M discovered Long's failure to disclose his FCA claims to the bankruptcy court.  GSD&M filed a second motion to dismiss,

No. 14-10999

arguing that because Long failed to disclose his claims, he had taken inconsistent positions in two different matters and should therefore be judicially estopped from continuing to pursue his FCA claims. Long argued that he never intentionally concealed his FCA claims and that his failure to disclose them was inadvertent. He argued that because his bankruptcy plan required repaying 100% of the principal of his debts, he thought that there was no need to disclose additional assets after the plan was confirmed. The district court granted GSD&M's motion, treating it as a motion for judgment on the pleadings. The district court explained that Long failed to satisfy his "affirmative, ongoing duty to disclose [to the bankruptcy court] all assets, including contingent and unliquidated claims and potential causes of action." Citing *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012), the district court determined that Long knew about the claims and had a financial motive to conceal them—namely, maintaining his interest-free payment plan, paying his debts over five years rather than over a shorter period, and ensuring the discharge of $4,504.91 in unsecured claims.

The district court also held that Long could not personally pursue his FCA claims even if he reopened the bankruptcy proceeding because, quoting *In re Vioxx Prods. Liability Litig.*, 889 F. Supp. 2d 857, 861 (E.D. La. 2012), "[t]he Fifth Circuit's 'strict stance on judicial estoppel in the context of bankruptcy filings'" prohibits it.[3] However, because Long's FCA claims would

---

[3] To the extent that district courts and bankruptcy courts within our circuit have interpreted our precedent as requiring a "strict stance" that requires applying judicial estoppel every time the elements are met, without regard to the specific facts and equities of the case, that interpretation is a misunderstanding of our precedent. As discussed in the text below, *infra* Part II at 5–6, and as we explained in *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc), judicial estoppel is a flexible doctrine that should be applied in light of its purpose of protecting the judicial process. *Id.* ("[T]he Supreme Court has refused to establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel . . . ." (internal quotation marks omitted)).

4

have been included as assets in the bankruptcy estate had he disclosed them, the district court gave Long's bankruptcy trustee seven days to decide if she wanted to continue pursuing the claims.  The trustee declined.

Long moved for reconsideration, asserting several procedural objections, all of which the district court rejected.  Long appealed the district court's final judgment and its orders on several motions.

## II.

Long's central argument is that the district court erred by invoking judicial estoppel to dismiss his claims.  Judicial estoppel "is an equitable doctrine invoked by a court at its discretion" for the purpose of "protect[ing] the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal quotation marks omitted).  "[T]he Supreme Court has refused to establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel . . . ." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc) (internal quotation marks omitted); *see also* Wright & Miller, Preclusion of Inconsistent Positions—Judicial Estoppel, 18B Fed. Prac. & Proc. Juris. § 4477 (2d ed. 2015) ("[Courts focus on] whether allowing a party to take seemingly inconsistent positions in separate actions would enable the party to gain an unfair advantage, or to impose an unfair disadvantage on its new adversary."); 18 James Wm. Moore et al., Moore's Federal Practice § 134.31 at 73 (3d ed. 2011) ("[The doctrine] should be applied flexibly, with an intent to achieve substantial justice.").

"[A]gainst the backdrop of the bankruptcy system . . . judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system . . . ." *Reed*, 650 F.3d at 574; *see also Jethroe v. Omnova*

*Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) ("Judicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset."). Given the doctrine's equitable nature, we review a trial court's decision to invoke judicial estoppel for abuse of discretion. *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008) (citing *Browning Mfg. V. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 205 (5th Cir. 1998)); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997) ("[D]eference . . . is the hallmark of abuse-of-discretion review.").

Because judicial estoppel is equitable in nature, trial courts are not *required* to apply it in every instance that they determine its elements have been met. Long indicated at oral argument that the district court thought its hands were tied by our precedent, and that it had to dismiss Long's claims under what it believed was a *per se* rule when debtors fail to disclose potential claims to a bankruptcy court. While many of our judicial estoppel cases in the bankruptcy context involve bad faith by a dishonest party trying to conceal his assets from creditors, Long argues that his case is different because he mistakenly believed, on advice from his bankruptcy attorney, that he did not have to disclose his FCA claims because his Chapter 13 plan was a 100% repayment plan. Long is correct that there is no *per se* rule estopping any party who fails to disclose potential claims to a bankruptcy court. *E.g.*, *Reed*, 650 F.3d at 574 ("[D]ifferent considerations 'may inform the doctrine's application in specific factual contexts.'" (quoting *New Hampshire*, 532 U.S. at 751)). Instead, we leave the decision to invoke judicial estoppel to the discretion of the trial court (district court or bankruptcy court, as the case may be) in the first instance.

No. 14-10999

Our court, sitting *en banc*, has offered guidance on invoking judicial estoppel. Courts should look to whether: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Reed*, 650 F.3d at 574. The presence of one or more of these elements does not mandate the invocation of judicial estoppel. Rather, courts should determine if applying judicial estoppel is appropriate in light of the specific facts of each case and the doctrine's purpose of "protect[ing] the integrity of the judicial process." *Id.*

Because the parties here agree that the first two elements are met,[4] Long's case turns on the third element—whether he had a financial motive to conceal his post-confirmation claims from the bankruptcy court or instead acted inadvertently. To be sure, if a debtor's failing to disclose was inadvertent, judicial estoppel is inappropriate; but inadvertence exists "only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *In re Coastal Plains*, 179 F.3d at 210. "Whether a debtor's failure to disclose claims was inadvertent presents a question of fact" reviewed for clear error. *Love*, 677 F.3d at 262. Long argued before the district court (and now argues on appeal) that his failure was inadvertent on both grounds. The district court found that Long knew about

---

[4] It is "well settled" that "Chapter 13 debtors have a continuing obligation to disclose post-petition causes of action." *Flugence v. Axis Surplus Ins. Co. (In re Flugence)*, 738 F.3d 126, 129 (5th Cir. 2013) (citing *Browning Mfg. v. Mims (In re Coastal Plains), Inc.*, 179 F.3d 197, 207–08 (5th Cir. 1999)). "*Any claim with potential must be disclosed*, even if it is contingent, dependent, or conditional." *In re Coastal Plains*, 179 F.3d at 208 (internal quotation marks omitted). A debtor's silence "impliedly represent[s] that she ha[s] no such claim." *In re Flugence*, 738 F.3d at 130 (citing *Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 335 (5th Cir. 2004)). And, to later raise the claim in a separate proceeding is "plainly inconsistent" with the implied representation in bankruptcy court. *In re Flugence*, 738 F.3d at 130.

No. 14-10999

his claims while his bankruptcy was still pending and, given the beneficial terms in his bankruptcy plan, had a motive to conceal. In light of these findings, the district court determined that applying judicial estoppel was an appropriate remedy. As discussed below, these findings are supported by the record.

## A.

To show inadvertence through lack of knowledge, a debtor "must show not that she was unaware that she had a duty to disclose her claims but that . . . she was unaware of the facts giving rise to them." *Jethroe*, 412 F.3d at 601. "Bankruptcy law imposes [the duty to disclose] as long as the debtor has enough information to suggest that he may have a potential claim; the debtor need not know all of the underlying facts or even the legal basis of the claim." *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 362 (5th Cir. 2014). The district court found that Long was aware of the facts underlying his claims as early as 2010 and Long filed this lawsuit in 2011, at about the halfway point in his five-year bankruptcy plan. *See id.* at 363 (holding that drafting and disclosing a complaint was sufficient to show knowledge). Long argues, without supporting authority, that the test for knowledge is different where claims are filed on behalf of the United States in a *qui tam* action like the one here. In Long's view, "it is less realistic to expect a third party to recognize a potential interest in a potential right of action belonging to someone else, specifically, the Government." Regardless of whether the government has the primary interest in the lawsuit, the party who files a *qui tam* action under the FCA has his own interest at stake and is deemed to have knowledge of this interest (at the very latest) when he files the claims. *See Spicer*, 751 F.3d at 362–63 (holding that disclosure obligation was triggered for debtor whose estate was the relator in a *qui tam* action); *cf. Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S.

No. 14-10999

765, 773–74 (2000) (explaining that the FCA "effect[s] a partial assignment of the Government's damages claim" and a relator's interest is sufficient to create standing).

**B.**

A motivation to conceal may be shown by evidence of a potential financial benefit that could result from concealment. *Love*, 677 F.3d at 262. As noted by the district court, there were three terms particularly beneficial to Long in his bankruptcy plan: (1) he was not required to pay any interest on his debts; (2) he was given five years (rather than a shorter period) to repay the principal on his debts; and (3) $4,504.91 in unsecured claims were discharged. As the district court explained, had Long disclosed his FCA claims, his creditors may have sought modification and the bankruptcy court might have modified his plan to require paying some of the interest, paying over a shorter period, or paying some of the discharged debts.[5] As GSD&M argued, "[t]he thousands of dollars Long stood to save on interest payments provided more than sufficient motive for his non-disclosure." Moreover, Long himself recognized that his FCA claims could impact his repayment obligations under the plan. After GSD&M informed the district court that Long had not disclosed his claims, Long moved to reopen his bankruptcy proceeding "so that, in the event of a recovery in this case, he may pay interest to his creditors."[6]

---

[5] In finding motive, the district court relied on the no-interest term and the 60-month repayment period in Long's plan. While the district court also noted the $4,504.91 in discharged claims, its finding of motive did not hinge on these discharged claims—the no-interest term and five-year period were sufficient. Even if, as Long contends, these were disallowed claims for which the creditors never filed a proof of claim, the other plan terms are sufficient to support the district court's conclusion that Long had a motivation to conceal.

[6] Even if Long's failure to disclose would not have actually harmed his creditors because he offered to reopen the bankruptcy to include the FCA claims, it would not change the outcome here. "'Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests

9

Long fails to explain why these benefits did not provide sufficient motive for concealment. *See Love*, 677 F.3d at 262 (holding that after a defendant establishes the debtor's motive to conceal, "it [falls to the debtor] to show that the omission of his claims from his schedule of assets was inadvertent"); *Jethroe*, 412 F.3d at 601 (stating that our precedent "requires that there be 'no' motive for concealment"). He emphasizes that his plan was a 100% repayment plan—meaning that the plan required paying 100% of the principal owed to his creditors—and that he therefore had no reason to hide assets. But, the district court found that the interest alone that Long saved provided sufficient motive. *See In re Watts*, No. 09-35864, 2012 WL 3400820, at *7–8 (Bankr. S.D. Tex. Aug. 9, 2012) (holding that an interest-free payment plan spread over five years provides sufficient motive to conceal). The record supports this finding.

Long argues that because inadvertence is a question of fact, *see Love*, 677 F.3d at 262, the issue must be decided on summary judgment rather than on a motion to dismiss. In turn, he argues that because he raised a genuine issue of material fact with respect to inadvertence, the case should have gone to trial. However, where a successful affirmative defense appears on the face of the pleadings, we have not hesitated to apply judicial estoppel to dismiss claims under Rules 12(b)(6) or 12(c). *See, e.g., Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 336 (5th Cir. 2004) (directing the district court to dismiss the plaintiffs' claims as judicially estopped).[7] Here, the district court treated GSD&M's motion to dismiss as one

---

that a debtor should consider disclosing personal assets only if he is caught concealing them.'" *In re Superior Crewboats, Inc.*, 374 F.3d at 336 (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)); *see also Love v. Tyson Foods, Inc.*, 677 F.3d 258, 265 (5th Cir. 2012) ("[A debtor's] assertion that he would not gain an unfair advantage if not estopped does not speak to the issue of inadvertence . . . .").

[7] *See also Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) (unpublished) ("If, based on the facts pleaded and judicially noticed, a successful affirmative defense

for judgment on the pleadings and in turn accepted as true all of the factual allegations in Long's complaint and the facts contained in Long's bankruptcy filings.  The district court determined that Long's allegations, along with the judicially noticeable facts contained in his bankruptcy filings,[8] indicated that Long had a financial motive conceal the claims.  This was not an abuse of discretion.

Long also argues that judicial estoppel should not bar his claims because the law was not well-settled with respect to his obligation to disclose claims first discovered after confirmation of his plan.  Long asserts that he did not become aware of and file his FCA claims until three years after his plan's confirmation, at which time the law was unclear regarding his obligations because of an inconsistency between 11 U.S.C. § 1306 and § 1327.[9]  This argument fails.  Assuming *arguendo* that such an inconsistency exists, the inconsistency is not relevant to Long's case.  Long's plan specified that "[u]pon confirmation of the plan, all property of the estate **shall not** vest in the Debtor(s), and **shall** remain as property of the estate subject to the automatic stay of 11 U.S.C. § 362" (emphasis in original); *see Flugence v. Axis Surplus Ins. Co. (In re Flugence)*, 738 F.3d 126, 129–30 (5th Cir. 2013) (holding that

---

appears, then dismissal under Rule 12(b)(6) is proper.") (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)); *Johnson v. Deutsche Bank Nat. Trust Co.*, No. 3:12-CV-3542-L, 2013 WL 3810715, at *8 (N.D. Tex. July 23, 2013) ("[B]ecause the elements of judicial estoppel appear on the face of Plaintiff's complaint and in court filings that are subject to judicial notice, this affirmative defense may be properly considered for purposes of Defendants' motion to dismiss."); *Abreu v. Zale Corp.*, No. 3:12-CV-2620-D, 2013 WL 1949845, at *1 (N.D. Tex. May 13, 2013) (considering judicial estoppel in the context of a motion for judgment on the pleadings under Rule 12(c)).

[8] It is "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

[9] *See In re Flugence*, 738 F.3d at 130 n.2 (5th Cir. 2013) (discussing an apparent conflict between two sections of the Bankruptcy Code).

when a plan specifies the vesting structure the apparent inconsistency is of no consequence).

## III.

Long made several procedural objections to the district court's dismissal of his claims and he asks us to review them in the context of his Motion for Relief from Final Judgment and Order of Dismissal, a Rule 59(e) motion that the district court denied and that we review for abuse of discretion. *See Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010). We address these objections below.

The district court did not err in ruling on GSD&M's motion to dismiss, treating it as a motion for judgment on the pleadings. As already discussed, our cases and the leading Supreme Court case applying judicial estoppel have invoked the doctrine at the motion-to-dismiss stage. Where the defense appears on the face of the pleadings and in judicially noticeable facts, it may be considered in a motion to dismiss. *See New Hampshire*, 532 U.S. at 745; *In re Superior Crewboats, Inc.*, 374 F.3d at 336; *Reed v. City of Arlington*, 795 F. Supp. 2d 465, 467 n.1 (N.D. Tex. 2008) (construing a summary judgment motion relying on judicial estoppel as a motion to dismiss), *aff'd on reh'g en banc*, 650 F.3d 571 (5th Cir. 2011).

Although GSD&M submitted evidence in its reply brief to the motion to dismiss, the district court expressly stated in its order that it did not consider these materials in deciding to apply judicial estoppel. If the district court does not rely on materials in the record, such as affidavits, it need not convert a motion to dismiss into one for summary judgment. *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995). "[T]he mere submission [or service] of extraneous materials does not by itself convert a Rule 12(b)(6) [or 12(c)] motion into a motion for summary judgment." *Finley Lines Joint Protective Bd. v. Norfolk S.*

*Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (internal quotation marks omitted) (second alteration in original).   Moreover, an appellate court must "give credence to [a] district court's statement that it did not consider matters outside the pleadings," and "[o]nly if it appears that the district court *did* rely on matters outside the pleadings should an appellate court treat the dismissal as a summary judgment." *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 (5th Cir. 1993).   Because the district court did not consider the materials in the reply brief, it did not abuse its discretion in denying Long's motion to strike the materials. *See United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (reviewing denial of a motion to strike for abuse of discretion). Likewise, the brief filed by the bankruptcy trustee addressing judicial estoppel did not infect the district court's order with error.   The district court expressly stated that it did not rely on the trustee's brief for its ruling and that Long could not identify any prejudice that resulted from allowing the trustee to file.

Long argues that GSD&M's motion to dismiss was untimely and that GSD&M lacked "good cause" under Rule 16(b)(4) for filing after the dispositive motions deadline.   We review a district court's decision to allow an untimely filing for abuse of discretion. *See, e.g.*, *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010).   According to Long, GSD&M must offer a persuasive reason why filing before the deadline "could not reasonably be met despite the diligence of the party seeking the extension." *See Argo v. Woods*, 399 F. App'x 1, 3 (5th Cir. 2010) (unpublished) (internal quotation marks omitted).   However, as the district court noted, motions for judgment on the pleadings may be filed at any time after the pleadings are closed so long as filing them does not delay trial, and it cited several district court orders that have allowed such filings. *See* Fed. R. Civ. P. 12(c).   Moreover, district courts

No. 14-10999

have broad discretion under Rule 6(b) to expand filing deadlines. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995).

Long argues that the district court erred by giving the trustee only a week to decide whether to continue pursuing Long's FCA claims on behalf of the estate before dismissing the lawsuit. Given that the trustee did not complain and had already indicated that she would not pursue the claims, the district court did not abuse its discretion. Even if the district court should have given the trustee more time, this issue is independent from the issue of whether Long is *personally* estopped from pursuing the claims. *See Reed*, 650 F.3d at 575 (holding that a trustee's authority over undisclosed causes of action is "not affected by [the debtor's] failure to disclose the asset, and it [is] not extinguished by the conclusion of the bankruptcy case") (citing 5 Collier on Bankruptcy ¶ 554.03, p. 14 (15th ed. rev. 2004) ("Even after the case is closed, the estate continues to retain its interest in unscheduled property.")). "[A]n innocent trustee can pursue . . . a judgment or cause of action that the debtor fails to disclose in bankruptcy." *Reed*, 650 F.3d at 573; *see also Kane*, 535 F.3d at 387–88 (discussing the benefit to the creditors in allowing the trustee to continue pursuing the claim). Any motion for an extension benefitting the trustee was therefore irrelevant to whether Long is judicially estopped.

**IV.**

For the foregoing reasons, we AFFIRM the judgment of the district court.

14