

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00282-CV

_____

HAROLD MILLER, Appellant

V.

CONFORMIS, INC. AND JOSEPH BERMAN, Appellees

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-298642-18

Before Sudderth, C.J.; Birdwell and Womack, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

The trial court granted summary judgment against appellant Harold Miller on the basis of judicial estoppel. The hitch was Miller's failure to disclose this lawsuit in an ongoing bankruptcy, contrary to his duty to disclose all his assets. Appellees Conformis, Inc. and Joseph Berman argued that in equity, it was only fair to estop Miller from pursuing this undisclosed lawsuit. Appellees cited a wealth of Fifth Circuit authority to support their position, and the trial court agreed.

But the unique circumstances of Miller's case—namely, the fact that he was a Chapter 13 debtor who had agreed to repay all of his debts—renders the Fifth Circuit's work on this subject distinguishable. In light of these distinctions, we hold that appellees failed to conclusively prove three of judicial estoppel's four elements. We therefore reverse the summary judgment and remand.

## I. BACKGROUND AND CHAPTER 13 BANKRUPTCY

In 2013, Miller filed for Chapter 13 bankruptcy. In a questionnaire for his bankruptcy attorney, he truthfully indicated that he had no claims against third parties. The attorney filed with the bankruptcy court a schedule indicating that while Miller had many assets, those assets did not include any claims against third parties. The bankruptcy court approved Miller's Chapter 13 plan.

Miller's Chapter 13 plan was atypical. In a typical Chapter 13 bankruptcy, the debtor keeps his property and pays down his debt with monthly payments based on his

2

disposable income.[1] *In re Murphy*, 474 F.3d 143, 148 (4th Cir. 2007); *see Harris v. Viegelahn*, 575 U.S. 510, 135 S. Ct. 1829, 1835 (2015). The debtor pays all of his disposable income for the benefit of creditors for either a three-year or five-year "commitment period"; that period is usually three years if the debtor's income is below the state median, five years if above. *See* 11 U.S.C.A. § 1325(b)(4); *In re Pautin*, 521 B.R. 754, 759 (Bankr. W.D. Tex. 2014). If the debtor makes all of his payments, the debtor ordinarily receives a "broad[]" discharge of many types of debt. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 268, 130 S. Ct. 1367, 1376 (2010). Thus, the chief virtues of a Chapter 13 plan are that it allows the debtor to retain his property and to make structured payments leading to a discharge of many unsecured debts. *See Harris*, 135 S. Ct. at 1835.

But in his plan, Miller proposed to pay all of his debts, secured and unsecured, creating an atypical[2] "100% plan." At the end of his five-year plan, no debt would be discharged. Miller was using Chapter 13 simply to retain his property and to make structured payments on the debt. Thus, Miller's payment amount was not based on his disposable income, but on the size of his debts.

---

[1]The Bankruptcy Code defines "disposable income" as "current monthly income" less "amounts reasonably necessary to be expended" for "maintenance or support," business expenditures, and certain charitable contributions. *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 65, 131 S. Ct. 716, 721 (2011) (quoting 11 U.S.C.A. § 1325(b)(2)(A)(i)–(ii)).

[2]*See In re Dubois*, 834 F.3d 522, 532 (4th Cir. 2016) ("Chapter 13 debtors typically do not enter into 100 percent repayment plans . . . .").

In March 2016, Miller had a Conformis knee replacement. The implant was allegedly ill-fitting and required a second replacement to correct the problem. In November 2016, Miller's attorney sent a letter of intent to sue appellees Conformis and his surgeon, Berman. However, he did not update his bankruptcy schedules to list the lawsuit as an asset.

Miller was unable to keep up with his bankruptcy payments, and in June 2017, his bankruptcy was dismissed without prejudice. He refiled his bankruptcy case in December 2017, but in his updates and revisions, he failed to mention his potential lawsuit against Conformis and Berman. Again it was a five-year, 100% plan, and as before, the bankruptcy court approved the plan.

In March 2018, Miller sued Conformis and Berman. In March 2019, the defendants deposed Miller and discovered the bankruptcy. Miller's affidavit explained that at the deposition, he learned for the first time that he needed to include the lawsuit in his list of scheduled assets. In April 2019, Miller amended his bankruptcy filings to include the lawsuit, which Miller valued at $250,000.

Also in April 2019, the defendants moved for summary judgment on grounds of judicial estoppel. They argued that Miller had a duty to disclose this lawsuit to the bankruptcy court, and because Miller failed to disclose this suit, he should be estopped from proceeding. The trial court agreed and granted summary judgment against Miller.

## II.    JUDICIAL ESTOPPEL

In his first and second issues on appeal, Miller challenges appellees' proof to support the elements of judicial estoppel.  Appellees assert that they have offered conclusive proof to support the defense, including evidence

- that Miller took inconsistent positions in that he failed to disclose the suit in the bankruptcy proceedings, but he then brought this suit;

- that the bankruptcy court officially adopted his inconsistent position by confirming his bankruptcy plan;

- that Miller had a financial motive to conceal the suit, such that it was safe to presume his nondisclosure was not inadvertent; and

- that Miller derived an unfair benefit from the nondisclosure.

We hold that appellees have conclusively proved the first element of judicial estoppel.  However, as we explain, there remain questions of fact on the other elements, which preclude summary judgment.

### A.    Standard of Review and Applicable Law

Judicial estoppel is an affirmative defense upon which appellees had the burden of proof.  *See Ventling v. Johnson*, 466 S.W.3d 143, 146 (Tex. 2015).  A defendant who conclusively proves all elements of an affirmative defense is entitled to summary judgment.  *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).  An issue is conclusively established if reasonable minds could not differ about the conclusion to

be drawn from the facts in the record. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017). In reviewing summary judgment, we view the evidence in the light most favorable to the nonmovant, crediting evidence if a reasonable jury could do so and disregarding contrary evidence and inferences unless a reasonable jury could not. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018).

"Judicial estoppel precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding to obtain an unfair advantage." *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009) (per curiam). A party cannot be judicially estopped if it did not prevail in the prior action. *Id.* The doctrine is not intended to punish inadvertent omissions or inconsistencies but rather to prevent parties from playing fast and loose with the judicial system for their own benefit. *Id.*

The integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999). "Judicial estoppel, however, should be applied with caution to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement." *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (internal quotations omitted). It is not to be mechanically applied and demands a flexible approach. *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1187 (11th Cir. 2017) (op. on reh'g en banc); *accord Matter of Parker*, 789 Fed. App'x 462, 464 (5th Cir. 2020) (per curiam).

6

This court applies federal law when deciding whether judicial estoppel applies based on a position that a party took in prior bankruptcy proceedings. *Flores v. Deutsche Bank Nat'l Tr. Co.*, No. 02-12-00033-CV, 2014 WL 4109645, at \*5 (Tex. App.—Fort Worth Aug. 21, 2014, no pet.) (mem. op.) (citing *Stewart v. Hardie*, 978 S.W.2d 203, 208 n.1 (Tex. App.—Fort Worth 1998, pet. denied) (op. on reh'g)). To prevail, appellees must conclusively establish the elements of judicial estoppel under the federal test: (1) that Miller's current position is clearly inconsistent with his former position, (2) that the trial court accepted his first position (i.e. that Miller "successfully maintain[ed]" the earlier position), (3) that Miller's actions were not inadvertent, and (4) that Miller would gain an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.*; *see Horsley-Layman v. Adventist Health Sys./Sunbelt, Inc.*, 221 S.W.3d 802, 807 (Tex. App.—Fort Worth 2007, pet. denied).

## B.    Inconsistent Positions

Under our precedent, it is beyond dispute that Miller took inconsistent positions. In a bankruptcy action, the debtor must disclose all assets including contingent or unliquidated claims. *Horsley-Layman*, 221 S.W.3d at 806. A debtor's nondisclosure of his claim to the bankruptcy court is "tantamount to a representation that no such claim[] existed." *Haren v. Wells Fargo Bank, N.A.*, No. 02-14-00148-CV, 2015 WL 2341924, at \*5 (Tex. App.—Fort Worth May 14, 2015, pet. denied) (mem. op.); *see Horsley-Layman*, 221 S.W.3d at 807–08. Thus, Miller has taken inconsistent positions by effectively

asserting that his claim did not exist, but later filing this claim, effectively asserting that it does exist.

## C. Judicial Acceptance and Successfully Maintaining the Position

We have never addressed whether the trial court's action—simply confirming Miller's bankruptcy plan—qualifies as successfully maintaining the earlier position or the trial court formally accepting it. To date, we have only applied judicial estoppel at final discharge: only when the bankruptcy is finally closed and the debt is discharged have we held that the debtor succeeded in concealing a lawsuit. *See Haren*, 2015 WL 2341924, at *5; *Flores*, 2014 WL 4109645, at *6; *Horsley-Layman*, 221 S.W.3d at 808; *Stewart*, 978 S.W.2d at 208.

There is mixed authority on whether confirming a bankruptcy plan satisfies the second element of judicial estoppel. The Fifth Circuit has held that confirmation of a Chapter 13 plan means that the debtor has succeeded in concealing the lawsuit. *See Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 573 (5th Cir. 2015); *Flugence v. Axis Surplus Ins. Co. (In re Flugence)*, 738 F.3d 126, 130 (5th Cir. 2013) (per curiam) (op. on reh'g); *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005). Conversely, other federal circuits have suggested that the line should be drawn at discharge. *See Sadlowski v. Michaels Stores, Inc.*, 672 Fed. App'x 729, 730 (9th Cir. 2016) (concluding that the debtor's position was not accepted because the debtor "did not receive a discharge, a favorable ruling, or any other benefit"); *Strauss v. Rent-A-Ctr., Inc.*, 192 Fed. App'x 821, 823 (11th Cir. 2006) (per curiam) (concluding that judicial estoppel should not apply, in part

8

because "[t]he bankruptcy court never entered any order discharging any of Strauss's debts"); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1049 (8th Cir. 2006) (holding that there was no judicial acceptance because "the bankruptcy court never discharged Stallings's debts based on the information that Stallings provided in his schedules"). The Dallas Court of Appeals has endorsed the latter view. *Norris v. Brookshire Grocery Co.*, 362 S.W.3d 226, 231 (Tex. App.—Dallas 2012, pet. denied) (citing *Stallings* with approval).

We need not decide which view is correct. It is enough to note that the Fifth Circuit's primary justification for its holding is inapplicable to the unique facts of this case—in particular, the fact that Miller is a Chapter 13 debtor on a 100% plan. The Fifth Circuit has reasoned that when a bankruptcy court confirms a plan, judicial acceptance can be inferred because awareness of the undisclosed claim might affect the bankruptcy court's decision making: "[h]ad the court been aware of the claim, it may well have altered the plan." *Allen*, 813 F.3d at 573 (quoting *Flugence*, 738 F.3d at 130). For a typical Chapter 13 debtor whose plan payments are based on his disposable income, this is a fair stance. The bankruptcy court has arguably accepted the debtor's representation of his income by approving payments based on that income, and if additional sources of income were disclosed, this might lead the bankruptcy court to increase the debtor's payments to creditors. And when a lawsuit is settled or won, the proceeds could be considered income. *See, e.g.*, *Ortiz-Peredo v. Viegelahn*, 587 B.R. 321,

9

326–27 (W.D. Tex. 2018) (deeming settlement proceeds to be income that was subject to distribution); *In re Stretcher*, 466 B.R. 891, 896 (Bankr. W.D. Tex. 2011) (same).[3]

But here, Miller's payments were not based on his income, and thus extra sources of income were of no consequence to how much he would pay under his plan. *See Martinez v. Viegelahn*, 581 B.R. 486, 498–99 (W.D. Tex. 2017) (quoting *In re Richall*, 470 B.R. 245, 249 (Bankr. D.N.H. 2012)); *see also* 11 U.S.C.A. § 1325(b)(1). Under these distinctive facts, it is difficult to say that the confirmation of Miller's Chapter 13 plan operates as an "acceptance" of Miller's nondisclosure of potential sources of income, because that confirmed plan had nothing to do with Miller's income and likely would not have changed no matter how much income Miller disclosed.

We are also swayed by reasons of policy. It is said that the judicial acceptance element "ensures that judicial estoppel is only applied in situations where the integrity of the judiciary is jeopardized." *Allen*, 813 F.3d at 572–73. But if the integrity of the bankruptcy court is truly jeopardized, the bankruptcy court has plenty of tools to protect itself. *Martineau v. Wier*, 934 F.3d 385, 395 (4th Cir. 2019); *see Law v. Siegel*, 571 U.S. 415, 427, 134 S. Ct. 1188, 1198 (2014). A bankruptcy court can impose a variety of sanctions, including denial of a discharge. *Law*, 571 U.S. at 427, 134 S. Ct. at 1198. The court may also "deny an exemption for the proceeds from the debtor's lawsuit; it

---

[3]*But see In re Connor*, 463 B.R. 14, 18–19 (E.D. Mich. 2012) (collecting cases holding that a lawsuit was not present income when the lawsuit remained pending at confirmation), *aff'd sub nom. Connor v. Carroll*, 511 Fed. App'x 537, 538 (6th Cir. 2013).

may even fine or imprison a debtor for contempt or refer the matter for the United States Attorney's Office to consider prosecuting the debtor for perjury." *Slater*, 871 F.3d at 1187 (citation omitted).

Indeed, these solutions may be preferable to judicial estoppel, because they target an immoral debtor but leave his innocent creditors unharmed:

> Judges understandably favor rules that encourage full disclosure in bankruptcy. Yet pursuing that end by applying judicial estoppel to debtors' self-contradiction would have adverse effects on third parties: the creditors. Biesek's nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out his FELA claim would complete the job by denying creditors even the right to seek some share of the recovery. Yet the creditors have not contradicted themselves in court. They were not aware of what Biesek has been doing behind their backs. Creditors gypped by Biesek's maneuver are hurt a second time by the district judge's decision. Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application. Instead of vaporizing assets that could be used for the creditors' benefit, district judges should discourage bankruptcy fraud by revoking the debtors' discharges and referring them to the United States Attorney for potential criminal prosecution.

*Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006); *accord Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 276 (9th Cir. 2013); *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 387–88 (5th Cir. 2008) (per curiam). "Judicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor's deceit." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (Easterbrook, J.).

And at the same time that it disadvantages innocent creditors, judicial estoppel hands a "windfall" to the alleged wrongdoer whom the plaintiff has sued. *Martineau*, 934 F.3d at 396 (quoting *Slater*, 871 F.3d at 1187); *see Ah Quin*, 733 F.3d at 275 ("Perversely, the only 'winner' in this scenario is the alleged bad actor in the estopped lawsuit.").[4]

Because the Fifth Circuit's primary justification is inapplicable to these facts, because persuasive policy reasons weigh against finding an acceptance, and because we operate under a standard of review that requires us to view the matter in the light most favorable to Miller, we cannot *conclusively* say that Miller's position was judicially adopted or successfully maintained simply because the bankruptcy court confirmed his Chapter 13 plan. *See Frost Nat'l Bank*, 315 S.W.3d at 508. Rather, for purposes of summary judgment, we hold that reasonable minds could differ on whether Miller prevailed in the bankruptcy court. *See Cmty. Health*, 525 S.W.3d at 681; *Ferguson*, 295

---

[4]Moreover, even after approving the Chapter 13 bankruptcy plan, the debtor's and the court's positions remain somewhat fluid, and inadvertent nondisclosures are readily subject to correction after approval, which may imply that merely confirming the plan does not qualify as a firm judicial acceptance. After approval, the bankruptcy code and rules "liberally permit debtors to amend their disclosures when an omission is discovered." *Slater*, 871 F.3d at 1186. "Bankruptcy Rule 1009, which was proposed by the Supreme Court and adopted by Congress, permits a debtor to amend a schedule or statement 'as a matter of course at any time before the case is closed.'" *Id.* (quoting Fed. R. Bankr. P. 1009(a)). Creditors, debtors, and trustees retain the option of pursuing a modification "[a]t any time . . . before the completion of payments under such plan." 11 U.S.C.A. § 1329(a). And if the debtor does not comply with his obligations, the whole of the plan may be undone and set back to square one. *See* 11 U.S.C.A. § 1307(c).

S.W.3d at 643.  Appellees have not carried their burden to conclusively establish the second element of judicial estoppel.

Because appellees have not conclusively established the second element, Miller is entitled to reversal of the summary judgment.  Nonetheless, in an abundance of caution, we proceed to address the remaining elements of judicial estoppel.

**D.    Inadvertence**

For the third element, we ask whether the party to be estopped has "acted intentionally, *not* inadvertently."  *Coastal Plains*, 179 F.3d at 206.  We have held that a previous inconsistent position is inadvertent only when the debtor lacks knowledge of the inconsistent position or has no motive for the inconsistency.  *Horsley-Layman*, 221 S.W.3d at 807.

A financial motive is "almost always" present "if a debtor fails to disclose a claim or possible claim to the bankruptcy court"; "[m]otivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure."  *Flores*, 2014 WL 4109645, at *6 (quoting *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012)).  The nearest parallel we have found to Miller's case is *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, in which the Fifth Circuit held that there was a financial motive to conceal a lawsuit for a debtor who had what the court referred to as a "100% repayment plan."  798 F.3d 265, 273 (5th Cir. 2015).  But unlike Miller's 100% plan, the debtor in *Long* had some unsecured creditors who did not file claims, and $4,504.91 of those unsecured debts were discharged at the end of the commitment period.  *See id.*  Also unlike Miller's

13

plan, the debtor was not paying interest on his debts, possibly to accommodate the limits of his disposable income. *See id.* On those facts, the *Long* court held that the debtor had three financial motives to conceal potential sources of income: "(1) he was not required to pay any interest on his debts; (2) he was given five years (rather than a shorter period) to repay the principal on his debts; and (3) $4,504.91 in unsecured claims were discharged." *Id.* The court reasoned that had the debtor disclosed his claims, "his creditors may have sought modification and the bankruptcy court might have modified his plan to require paying some of the interest, paying over a shorter period, or paying some of the discharged debts." *Id.*

However, "'[a]lthough it may generally be reasonable to assume that a debtor who fails to disclose a substantial asset in bankruptcy proceedings gains an advantage,' the specific facts of a case may weigh against such an inference." *Stallings*, 447 F.3d at 1049 (quoting *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 363 (3d Cir. 1996)). The specific facts of this case—primarily Miller's true 100% plan—show that none of the motives advanced in *Long* apply here.

Unlike *Long*, Miller was already paying interest on his unsecured debts "at the legal rate from the petition date" pursuant to the bankruptcy court's order. Moreover, under Miller's true 100% plan, his payments were not based on or limited by his income, and there is no reason to believe that if he obtained more income in the future, it would call for higher interest payments. *Cf.* 11 U.S.C.A. § 1322(b)(10).

Also, it does not appear that Miller had a motive to manipulate his plan duration. To review, debtors usually receive a three-year plan if they are under their state's median income, but a five-year plan if they are above the median. *See* 11 U.S.C.A. § 1325(b)(4); *see also* 11 U.S.C.A. § 1322(d). But in both the 2013 and 2017 bankruptcies, Miller was already on a five-year plan, so even if he disclosed additional sources of income that took him further above the state median, his situation would likely remain unchanged. And conversely, because his payments were not based on his income, obtaining additional income would not necessarily shorten the duration of his plan. *See Martinez*, 581 B.R. at 499 (observing that debtors who have agreed to pay the full amount of their debt are not required to make higher payments based on their income even if by doing so they "could pay off their unsecured creditors in a shorter period of time" (quoting *Richall*, 470 B.R. at 249)). Thus, disclosure of additional income would likely not alter his plan duration.

Finally, the *Long* court proposed that the debtor had a motive to conceal income in order to avoid being required to pay the "$4,504.91 in unsecured claims" that were discharged at the end of the plan. *See Long*, 798 F.3d at 273. But Miller's payments were based on the amount of his debt apportioned out over the life of his plan, not his income. Thus, any future income from this lawsuit would not have justified a modification to increase his payments. *See Martinez*, 581 B.R. at 498 (holding that the debtor's disposable income is effectively immaterial to the amount of payments "when the confirmed plan already pays unsecured creditors in full"). Moreover, unlike *Long*,

15

no debt was going to be discharged under his 100% plan, and thus concealing sources of future income would not bring him any closer to a discharge of debts. In that regard especially, *Long* is distinguishable.

In judicial estoppel cases stemming from bankruptcy proceedings, a dispute about the existence of a motive may be "a question of fact which is not subject to resolution on summary judgment." *Thompson v. Cont'l Airlines*, 18 S.W.3d 701, 704 (Tex. App.—San Antonio 2000, no pet.) (summarizing *In re Okan's Foods, Inc.*, 217 B.R. 739, 755 (Bankr. E.D. Penn. 1998)); *see State v. Clear Channel Outdoor, Inc.*, 463 S.W.3d 488, 493 (Tex. 2015) ("As a general rule, intent is a question of fact to be decided by the jury."). None of the motives identified in *Long* apply to the unique facts of this case, and appellees have not offered any evidence tending to show that Miller had some other motive to conceal his lawsuit. We therefore hold that a fact question remains as to the third element of judicial estoppel.

### E.     Unfair Advantage or Detriment

Consistent with our conclusion that there is no evidence of a motive to gain benefits or impose detriments, we also conclude that there is no evidence that such benefits or detriments actually materialized, as would satisfy the fourth element of judicial estoppel. *See New Hampshire v. Maine*, 532 U.S. 742, 751, 121 S. Ct. 1808, 1815 (2001); *Ferguson*, 295 S.W.3d at 644; *Flores*, 2014 WL 4109645, at *5.[5] Miller's actions in

---

[5]Berman insists that unfair benefit or detriment is not an element of judicial estoppel under the federal test. To the contrary, the United States Supreme Court

16

the bankruptcy proceeding did not prejudice appellees because they were not involved with the bankruptcy in any way. *See Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 279 (2d Cir. 2019). And appellees have not identified any unfair benefits or detriments that were actually reaped by Miller or visited on his creditors. Indeed, the Second Circuit has held that where, as here, "the [p]lan already required the [debtors] to repay their creditors in full," the nondisclosure gave rise to only a *de minimis* benefit to the debtors that was insufficient to justify the application of judicial estoppel. *See Clark v. AII Acquisition, LLC*, 886 F.3d 261, 267 (2d Cir. 2018).

Even supposing there were unfair benefits or detriments, Miller amended his bankruptcy schedules before the trial court took definitive action. To a limited degree, this would have mitigated any benefit or detriment. *See Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014) ("Spaine's creditors were not and could not have been injured by incomplete Chapter 7 schedules that were orally corrected before Spaine received a discharge."); *see also Ashmore*, 923 F.3d at 278 (concluding that any harm from a nondisclosure was mitigated by the debtor's corrective action once he realized his error); *Ah Quin*, 733 F.3d at 273–74 (similar); *cf. Martineau*, 934 F.3d at 397 (suggesting similar reasoning based on *Ah Quin*).

---

recognized the importance of this consideration in *New Hampshire v. Maine*, 532 U.S. at 751, 121 S. Ct. at 1815, and both the Texas Supreme Court and this court have treated it as an element, *see Ferguson*, 295 S.W.3d at 644; *Flores*, 2014 WL 4109645, at *5. Berman offers us no reason to depart from binding precedent.

17

We therefore hold that appellees have failed to conclusively prove the fourth element of judicial estoppel. We sustain Miller's first and second issues.[6]

### III.   STANDING

Lastly, Conformis contends that Miller lacked standing to pursue his claim in the first place. Conformis argues that the lawsuit became part of Miller's bankruptcy estate and that all his rights to this asset were extinguished. According to Conformis, the bankruptcy trustee was the only one with standing to bring the claim.

Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case. *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 331 (Tex. 2020). We review questions of standing de novo. *Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

When a person files a bankruptcy petition, he loses all right, title, and interest in all of his property, and his property is then vested in his bankruptcy estate. *Martin v. Clinical Pathology Labs., Inc.*, 343 S.W.3d 885, 888 (Tex. App.—Dallas 2011, pet. denied) (citing, *inter alia*, 11 U.S.C.A. § 541(a)(1)). Thus, in general, bankruptcy under chapters other than Chapter 13 may affect a debtor's standing to sue. *See id.*

---

[6]This renders it unnecessary to consider Miller's third issue, in which he offers a fallback position: that even if appellees conclusively established the defense of judicial estoppel, the bankruptcy trustee should nonetheless be allowed to bring the suit for the benefit of his creditors.

18

However, Chapter 13 has "distinctive features" that preserve the debtor's standing.  *Id.*  Although a Chapter 13 debtor loses all right, title, and interest in his property under § 541(a)(1), he remains in possession of all property of the estate under § 1306(b).  *Id.*  "Thus, every federal circuit court that has addressed the issue has concluded that Chapter 13 debtors retain standing to sue on claims that are owned by the bankruptcy estate."  *Id.* (collecting cases).  Moreover, § 1327(b) provides that when a Chapter 13 plan is confirmed, all property of the bankruptcy estate revests in the debtor, except as otherwise specified in the bankruptcy plan or order confirming the plan—and here, the plan and the order did not specify otherwise.  *See id.* at 890; *Dowler v. Delta Inv. Hous., Inc.*, 834 S.W.2d 127, 129 (Tex. App.—Eastland 1992, no writ) (quoting 11 U.S.C.A. § 1327(b)).  Miller's Chapter 13 bankruptcy therefore posed no obstacle to his standing to sue.

## IV.  CONCLUSION

Appellees conclusively proved the first element of judicial estoppel, inconsistent positions.  However, for purposes of the second element, a mere confirmation of Miller's plan does not conclusively show a judicial acceptance under these distinctive facts.  For purposes of the third element, none of the financial motives posited in *Long* apply to the facts of this case, and appellees have not conclusively proved any other sort of motive.  Finally, for purposes of the fourth element, appellees did not conclusively prove that Miller gained an unfair benefit or imposed an unfair detriment.

19

Because appellees failed to conclusively establish their affirmative defense, summary judgment was inappropriate. We therefore reverse and remand for further proceedings.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: July 30, 2020